**Glenda MIERA, et al.,**
**Plaintiffs–Appellants,**

v.

**FIRST SECURITY BANK OF UTAH, N.A., a Utah Corporation,**
**Defendant–Appellee.**

**Nos. 89–4132 and 89–4144.**

United States Court of Appeals, Tenth Circuit.

Jan. 7, 1991.

Parker M. Nielson (Terrell W. Smith, with him on the brief), Salt Lake City, Utah, for plaintiffs-appellants.

James S. Jardine (Anthony B. Quinn of Ray, Quinney & Nebeker with him on the brief), Salt Lake City, Utah, for defendant-appellee.

Before TACHA and McWILLIAMS, Circuit Judges, and NOTTINGHAM, District Judge.[*]

---

\* Honorable Edward W. Nottingham, United States District Judge for the District of Colora- do, sitting by designation.

McWILLIAMS, Circuit Judge.

Glenda Miera, and others, for themselves and on behalf of all other persons similarly situated, brought the present action against the First Security Bank of Utah, N.A., a Utah corporation (Bank), charging violations of the Securities Exchange Act of 1934 arising out of the Bank's handling of their stock interests in the Ute Distribution Corporation. 15 U.S.C. § 78j and Rule 10b–5, 17 C.F.R. § 240.10b–5. The plaintiffs alleged, *inter alia*, that they were all "terminated" or "mixed-blood" members of the Ute Indian Tribe of the Uintah and Ouray Reservations who had sold their stock in Ute Distribution Company at a time when the market for said stock was affected by the "market-making activities" of the defendant Bank and its agents as "defined" by the United States Supreme Court in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), and that none of the present plaintiffs were plaintiffs asserting similar claims in other actions brought against the Bank. A three-day bench trial resulted in a judgment in favor of the Bank. We affirm.

### Miera I

This case has a long history. It was filed in the United States District Court for the District of Utah in April, 1973. The district judge later entered an order certifying the class. He also approved a proposed pretrial order submitted by plaintiffs' counsel, apparently entering the approval order before the proposed order had been received by defense counsel. Based on the pretrial order, the district judge then granted summary judgment in favor of the plaintiffs and against the Bank on the issue of liability. The district judge held that the liability issue was governed by *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).[1] The matter was then referred to a Special Master to fix the "quantum of recovery" for each individual plaintiff and each individual member of the class. The Special Master held numerous hearings and some five years later filed his report.

In the meantime, the judge handling the case died and a successor judge took over. The successor judge approved the Master's report and entered final judgment. In his memorandum and order approving the Master's report, the district judge noted that the Bank had sought reconsideration of a number of the rulings made by the deceased judge, including the entry of the pretrial order and the partial summary judgment, but stated that he was disinclined to reconsider interlocutory orders entered by the deceased judge and that in his view the "most appropriate avenue of review is to be found in the appellate process."

On appeal by the Bank, we reversed. *Miera v. First Security Bank of Utah, N.A.*, 776 F.2d 902 (10th Cir.1985). (*Miera I*) In so doing, we observed that the procedure followed by the district court in connection with the entry of the pretrial order violated its local rules, Fed.R.Civ.P. 16, and "fundamental due process." We then noted that the partial summary judgment "was necessarily based on the pretrial order," and that the final judgment was of course an extension of the partial summary judgment. In reversing, we remanded the case with direction that the order granting partial summary judgment be vacated as well as the pretrial order itself.

On remand, the district court observed that in light of our opinion in *Miera I*, "[w]e are now writing on a relatively clean if somewhat ancient slate." That was our

---

**1.** *Affiliated Ute* also had its genesis in the United States District Court for the District of Utah. That case was filed in February, 1965, on behalf of certain terminated Ute Indians who had sold their stock in the Ute Distribution Corporation in 1963 and 1964. The action was initially filed as a class action, but the class action was later withdrawn and the case was refiled as a joinder action naming eighty-five terminated Ute Indians as plaintiffs. After trial, the district court entered judgment for the plaintiffs. On appeal, we reversed and remanded for further proceedings. *Reyos v. First Security Bank*, 431 F.2d 1337 (10th Cir.1970). On certiorari, the Supreme Court affirmed in part, and reversed in part, and remanded for further proceedings, *sub nom. Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

intent. Be that as it may, the district judge by his memorandum opinion and order filed October 31, 1986, ruled on several outstanding motions. Specifically, both sides had moved for summary judgment, the plaintiffs arguing that *Affiliated Ute* dictated a holding in their favor on the issue of liability, and the Bank arguing, *inter alia*, that the applicable statute of limitations barred recovery. The district court denied both motions, holding that there were factual issues which had bearing on the legal issues raised by the motions for summary judgment. For example, the district court noted that in about 1966 Gale and Haslem ceased handling the stock sales for the Utes and that the Bank later ceased entirely to serve as the transfer agent for the stock. In this regard the district court felt there was conceivably an issue in the present case as to when there was a market readjustment such that these plaintiffs, unlike the plaintiffs in *Affiliated Ute*, were "no longer affected by the Bank's earlier fraudulent conduct." Similarly, the district court felt that evidence was necessary to determine when each of the plaintiffs became aware of the Bank's "earlier fraudulent conduct" in order to determine when Utah's three-year statute of limitations would commence to run.

In the same order denying the motions for summary judgment, the district court, acting pursuant to Fed.R.Civ.P. 23(c)(1) (which authorizes a district court to alter or amend a class certification order before decision on the merits), vacated the class certification order entered by the previous judge and entered an order denying class certification. In connection therewith, the district judge held that "the asserted class members are no longer similarly situated and that common question of law and fact do not predominate over individual issues." However, the district court did permit the former class members to be joined as parties under Fed.R.Civ.P. 20.

The case later went to trial, and, as indicated, the district court found for the Bank and against the plaintiffs. The district court filed its commendably thorough 48-page Memorandum Opinion and Order on September 26, 1989. This appeal is from the judgment entered thereon.[2]

## Background

In 1954 Congress enacted the Ute Termination Act, 68 Stat. 868, as amended, 70 Stat. 936 and 76 Stat. 597, 25 U.S.C. §§ 677–677aa, the purpose of which was to prepare the Ute Tribe for the termination of federal supervision. The Act provided for the partition and distribution of assets between the mixed-blood and full-blood members of the tribe. The mixed bloods, pursuant to the Act, formed the "Affiliated Ute Citizens," which entity, in turn, formed the Ute Distribution Corporation (UDC). The purpose of the UDC was to manage jointly, with the Tribal Business Committee representing the full-blood members of the Ute Indian Tribe, all claims against the United States; all gas, oil and mineral rights of every kind, and all other assets not susceptible to equitable and practical distribution to which the terminated members are or may hereafter become entitled. In January, 1959, the UDC issued ten shares of its capital stock in the name of each terminated mixed-blood Ute. The Bank became the transfer agent for UDC stock. John Gale and Verl Haslem were assistant managers of a facility of the Bank located in an area where a number of the terminated Ute Indians lived, and they dealt directly with some of the *Reyos/Affiliated Ute* plaintiffs in the sale or transfer of their stock in UDC.

In February, 1965, a class action was filed against the Bank and its employees, Gale and Haslem, on behalf of terminated Utes who had sold their UDC stock prior to August 27, 1964. The plaintiffs alleged that the Bank and its officers had conspired to acquire UDC stock from the plain-

---

**2.** The original notice of appeal naming only Glenda Miera was filed on October 25, 1989, our No. 89–4132. An amended notice of appeal was filed on November 7, 1989, naming all remaining plaintiffs, our No. 89–4144. Under these circumstances the Bank agrees that this Court's appellate jurisdiction extends to all plaintiffs. We too agree. The two appeals have been consolidated for disposition.

tiffs in violation of securities laws. In June, 1965, the class action was dismissed and in July, 1965, the complaint was refiled as a joinder action naming eighty-five terminated Ute Indians as plaintiffs. The complaint was later amended to include a claim against the United States based on an alleged breach of duty in connection with plaintiffs' transfer of shares of stock in UDC. The trial was conducted with twelve so-called "bellwether plaintiffs" and on April 18, 1968, the district court found the Bank, and Gale and Haslem, liable for money damages to each of the twelve plaintiffs. The court found defendants Gale and Haslem liable to each of the twelve plaintiffs because they had violated their duty to make a fair disclosure and had succeeded in acquiring UDC shares for less than the fair market value. The court held that the Bank was jointly and severally liable with Gale and Haslem for damages to each of the twelve plaintiffs because it was put on notice of the improper actions of Gale and Haslem and had knowingly created apparent authority on the part of Gale and Haslem to act for the Bank. The United States was found liable to certain of the plaintiffs. The court also set the fair market value of the UDC stock at $1,500 per share.

On appeal, we reversed. *Reyos v. United States*, 431 F.2d 1337 (10th Cir.), *aff'd in part and rev'd in part sub nom. Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). As to the United States, we held that the United States no longer had any duty to the plaintiffs and therefore was not liable to any of the plaintiffs. We further held that the Bank itself had breached no duty owed the plaintiffs under its contract with UDC. As to Gale and Haslem, we held that in connection with their purchase of stock from certain of the plaintiffs, which stock was resold a few

days later at a profit, they had made misrepresentations concerning the market value of the stock, but no evidence was presented that the plaintiffs had relied on those misrepresentations. We concluded that there were no 10b–5 violations by either Gale or Haslem arising out of their "ministerial acts" in connection with plaintiffs' sale of stock to non-Indian purchasers.

On certiorari, the Supreme Court affirmed in part and reversed in part. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).[3] The Supreme Court agreed that the United States was not liable. The Supreme Court also agreed that Gale and Haslem had violated Rule 10b–5 by making misstatements concerning the fair market value of the stock, but that we had "viewed too narrowly the activities of Gale and Haslem" when we limited their misrepresentations to those transactions where they themselves bought stock from certain of the plaintiffs and then immediately resold the stock at a profit, and that misrepresentations by Gale and Haslem to facilitate stock sales from plaintiffs to non-Indian purchasers were also 10b–5 violations. *Id.* at 151–52, 92 S.Ct. at 1471. In this connection, the Supreme Court stated that "as the Court of Appeals itself observed, the record shows that Gale and Haslem 'were active in encouraging a market for the UDC stock among non-Indians.'" *Id.* at 152, 92 S.Ct. at 1471 (quoting *Reyos*, 431 F.2d at 1345). The Supreme Court also stated that we erred in concluding that the plaintiffs had not relied on the misrepresentations made by Gale and Haslem and in so doing stated that "positive proof of reliance is not a prerequisite to recovery." *Id.* at 153, 92 S.Ct. at 1472. Finally, the Supreme Court held that "[t]he liability of the bank, of course, is coextensive with

---

**3.** At about the same time Reyos, et al., filed their action, Affiliated Ute Citizens also brought suit against the United States in the United States District Court for the District of Utah seeking to have conveyed to its individual members a "pro rata" interest in the oil, gas and other minerals underlying the Uintah and Ouray Reservations in Utah. The district court dis-

missed that suit on the ground that it had no jurisdiction to entertain the action. On appeal, we affirmed. *Affiliated Ute Citizens v. United States*, 431 F.2d 1349 (10th Cir.), *aff'd* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). On certiorari, *Affiliated Ute* and *Reyos* were consolidated.

that of Gale and Haslem." *Id.* at 154, 92 S.Ct. at 1472.

### Miera II

In the instant case, the district court, after a bench trial, held that *Affiliated Ute* did not compel a finding that the Bank was liable to the present plaintiffs. In so holding, the district court was of the view that the essential finding in *Affiliated Ute* was that Gale and Haslem had a duty to disclose to the terminated Ute Indians that they were "facilitating" sales by mixed bloods to those seeking to profit in the non-Indian market, a market developed and encouraged by Gale and Haslem. The district court noted, however, that Gale and Haslem "left the market" in 1966 and that the "[e]xpert testimony on behalf of the Bank, which suggested that the market adjusted quickly following the departure of Gale and Haslem, went unrefuted." The district court further held that although the Bank had conceded liability, up to the time Gale and Haslem left the market (excepting the statute of limitations defense), the Bank was not liable on the basis of "causation" for any shares sold after April, 1966, the date when Gale and Haslem "left the market." The district court also found that the Bank had rebutted the "presumption of reliance" and that the plaintiffs would have followed the same course of conduct even if there had been full disclosure. The district court also held that Utah's three-year statute of limitations barred all claims based on shares of UDC stock sold before April 20, 1970, three years prior to the filing of the present case.

In sum, the district court in *Miera II* held that those claims accruing before April 20, 1970, were barred by Utah's three-year statute of limitations, because those plaintiffs either knew or had "reasonable cause" to know of Gale and Haslem's misconduct. As to those claims arising after April 20, 1970, the district court held that the effect of any misconduct "influencing the market" by Gale and Haslem, or the Bank, was spent inasmuch as Gale and Haslem left the market in 1966 and the Bank ceased being the transfer agent in 1968. Furthermore, the Bank's evidence indicated that

there had been "market readjustment" at the time of the stock sales by these plaintiffs. Additionally, the district court found that the Bank had rebutted the "presumption of reliance" and had shown that these plaintiffs would have followed the same course of conduct even if there had been full disclosure.

The record on appeal does not contain a transcript of the evidence adduced at trial. This was a purposeful omission, as counsel for the plaintiffs in his reply brief states that the plaintiffs are not challenging any factual determination made by the district court, and hence a trial transcript was unnecessary. On such state of the record, we proceed in our review on the premise that all findings of fact made by the district court are supported by the record.

As their first ground for reversal, plaintiffs argue that under our mandate the district court acted improperly in retrying the case, and that our mandate only permitted the district court to determine whether *Affiliated Ute* controlled the instant case. We disagree. In *Miera I*, we reversed the judgment and remanded with direction that the district court vacate its order granting partial summary judgment and its pretrial order. The district court complied with our directions and vacated the partial summary judgment and pretrial order. Such, in practical effect, did wipe the slate clean, and the district court then went forward to resolve, in orderly fashion, the case on its merits. We reject the suggestion that under our mandate in *Miera I* the only issue to be determined by the district court was whether *"Affiliated Ute* is controlling on the facts." After listening to the "facts" in a bench trial, the district court determined that *Affiliated Ute* did not control the instant case and, therefore, the district court necessarily had to resolve the other issues between the parties.

Plaintiffs next argue that it was error for the district court to vacate the class certification order entered previously by the judge who was then handling the case. We find no abuse of discretion.

Fed.R.Civ.P. 23(c)(1) provides that a certification order may be altered or amended at any time before a decision on the merits. Moreover, the decertification order in the instant case afforded class members an opportunity to join in the present action as plaintiffs. The abuse of discretion standard applies not only to an initial determination to certify a class, but also to a subsequent determination to decertify. *Baum v. Great Western Cities, Inc.*, 703 F.2d 1197, 1210 (10th Cir.1983); *Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432, 463 (10th Cir.1978).

Counsel also claims that the "dismissal of claims already reduced to judgment and left undisturbed on appeal is in error." This argument is based on the erroneous belief that in *Miera I* we left some judgments for some of the plaintiffs undisturbed. Such is incorrect. In *Miera I*, we reversed the entire judgment of the district court. *See Miera*, 776 F.2d at 906–07.

Certain of the former class members who joined as plaintiffs had their pleadings stricken and their claims dismissed because of their failure to comply with discovery orders. In the instant case the district court had imposed several deadlines for taking depositions of certain plaintiffs who did not comply therewith, and only after clear warning dismissed their claims. Under the circumstances, we find no abuse of discretion. *See Willner v. University of Kansas*, 848 F.2d 1023, 1030 (10th Cir. 1988); *Lamb v. C.I.R.*, 733 F.2d 86, 87–88 (10th Cir.1984); *Mertsching v. United States*, 704 F.2d 505, 506 (10th Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

Several of the matters raised above are, in a sense, moot, if it be determined that the district court's ultimate ruling that the Bank is not liable to these plaintiffs is upheld. On this question counsel argues that under our mandate in *Miera I* and *Affiliated Ute* plaintiffs were entitled to judgment. Certainly our mandate did not require a re-entry of judgment in favor of the plaintiffs. On the contrary, we reversed the judgment previously entered.

It is true that in *Miera I* we specifically stated that, from the record then before us, we could not tell whether *Affiliated Ute* controlled the liability issue in the case. The district court determined that *Affiliated Ute* did not control. We agree. There are significant differences between *Affiliated Ute* and the instant case. The plaintiffs in the two cases, of course, are not the same. *Affiliated Ute* was filed in the district court in 1965 and covered sales of UDC stock made in 1963 and 1964. The instant case was filed by different plaintiffs eight years later and covered stock sales made from 1964 up to the date of filing. As concerns the statute of limitations, certainly the present plaintiffs were in a different position than the plaintiffs in *Affiliated Ute*. The statute of limitations was not raised in *Affiliated Ute*, and, under the circumstances, could not have been raised. In addition, Bank officers Gale and Haslem left the market in 1966 and the district court found that such being the case, the Bank was not liable for sales made after such departure because the evidence showed that no prior or subsequent acts of the Bank or its employees caused damage to these plaintiffs.

Judgment affirmed.