David L. **GOODNIGHT**, Dorothy Dominguez, Brent Richardson, Eugene J. Banks, Everett S. Rossborough, Sr., John H. Harvey, and Alyce M. Goodliffe, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Donna **SHALALA**, M.D., in her official capacity as Secretary of Health and Human Services; Scott Bean, in his official capacity as State Superintendent of the Office of Education; Blaine Peterson, in his official capacity as Executive Director of the Utah Office of Rehabilitation; and Charles Schmitt, in his official capacity as Administrator of the Division of Disability Determination Services, Defendants.

No. 92–C–279W.

United States District Court, D. Utah, C.D.

Oct. 27, 1993.

Michael E. Bulson, Utah Legal Services, Inc., Ogden, UT, Kay Kosow Fox, Utah Legal Services, Inc., Salt Lake City, UT, Maureen Cleary, Salt Lake City, UT, for plaintiffs.

Jan Graham, Atty. Gen., John S. McAllister, Asst. Atty. Gen., Salt Lake City, UT, for State defendants.

John R. Niemeyer, Brian G. Kennedy, Trial Attys., U.S. Dept. of Justice, Civil Div., Washington, DC, for Secretary defendant.

WINDER, Chief Judge.

This matter is before the court on the Motion to Dismiss for lack of subject matter jurisdiction brought by Defendant Donna Shalala, M.D. (the "Secretary"); the Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted brought by Defendants Scott Bean, Blaine Peterson, and Charles Schmitt (the "State Defendants"); and on the Motion for Class Certification brought by Plaintiff David Goodnight, et al. ("Plaintiffs"). A hearing on all three motions was held on June 29, 1993. At the hearing, the Secretary was represented by John R. Niemeyer, the State Defendants were represented by John S. McAllister, and Plaintiffs were represented by Michael E. Bulson, Maureen L. Cleary, and Kay Kosow Fox. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to all motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

Pursuant to the Social Security Act (the "Act"), the Federal Government provides benefits to disabled persons under two programs administered by the Social Security Administration (the "SSA"). The Social Security Disability Insurance Program ("Title II" or "SSDI"), codified at 42 U.S.C.A.

§§ 401–33 (West 1991 & Supp.1993), pays benefits to disabled persons who have contributed to the program and who suffer from a mental or physical disability. The Supplemental Security Income Program ("Title XVI" or "SSI"), codified at 42 U.S.C.A. §§ 1381–83 (West 1991 & Supp.1993), provides benefits to indigent disabled persons. Both statutes define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual is found to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Pursuant to statutory authority, *see* 42 U.S.C.A. § 405(a), the Secretary has adopted detailed regulations governing eligibility for SSDI, *see* 20 C.F.R. Part 404, Subpt. P (1993), and SSI benefits. *See id.* § 416, Subpt. I (1993). The regulations for both programs are essentially the same. At each level of review, a claimant's application for disability benefits is evaluated according to a five-step "sequential evaluation" process. *Id.* §§ 404.1520, 416.920. The first step is to determine whether the claimant is engaged in "substantial gainful activity." *Id.* §§ 404.-1520(a), (b), 416.920(a), (b). If so, benefits are denied. *Id.* If the claimant is not engaged in such activity, the second step is to determine whether the claimant's impairment or combination of impairments is "severe"—significantly limiting the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the impairment is not severe, benefits are

denied. *Id.* If the impairment is severe, the third step is to ascertain whether the claimant's impairment satisfies the durational requirement and is included in the "Listing of Impairments" (the "Listings") contained in 20 C.F.R. Part 404, Subpt. P, App. 1. If not specifically listed, the impairment or combination of impairments can "equal" a listed impairment. *Id.* §§ 404.1520(d), 416.920(d). The Listings consist of specified impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful work activity. If a claimant's condition satisfies the durational requirement and meets or equals the level of severity of a listed impairment, the claimant is conclusively presumed to be disabled and entitled to benefits. *Id.* If the claimant's impairment does not meet or equal the severity of a listed impairment, the fourth step is to assess the individual's "residual functional capacity" ("RFC"); this assessment measures what a claimant can still do despite the claimant's impairments. If the claimant's RFC permits performance of the claimant's prior work, benefits are denied. *Id.* §§ 404.1520(e), 416.920(e). If the claimant is not capable of doing her past work, a decision is made under the fifth and final step whether, in light of her RFC, age, education, and work experience, the claimant has the capacity to perform other work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant does not have the capacity to perform other work, the claimant will be found disabled. *Id.*

Whether an individual is disabled is initially determined by a state agency, pursuant to regulations, guidelines, and standards established by the Secretary.[1] 42 U.S.C.A. §§ 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1993). In the case at bar, the agency is the Utah Division of Disability Determination Services (the "Utah DDDS").[2] If a claimant is dissatisfied with the initial decision of the Utah DDDS, the claimant is afforded a three-stage administrative review process, beginning with *de novo* reconsidera-

1. The Secretary is charged with establishing by regulation "uniform standards which shall be applied at all levels of determination, review, and adjudication in determining whether individuals are under disability...." 42 U.S.C.A. § 421(k)(1) (West 1991).

2. The Utah DDDS is a unit of the Utah State Office of Rehabilitation, which is within the Utah State Office of Education.

tion by the Utah DDDS. *See* 20 C.F.R. §§ 404.909(a)(1), 416.1400, 416.1409(a). If a claimant is dissatisfied with the Utah DDDS's decision on reconsideration, the claimant is entitled to a *de novo* hearing by an administrative law judge ("ALJ") within SSA's Office of Hearings and Appeals. 42 U.S.C.A. §§ 421(d), 1383(c)(1); 20 C.F.R. §§ 404.929, 416.1429, 422.201–422.210. If the ALJ's decision is adverse to the claimant, the claimant may then seek review by the Appeals Council. 20 C.F.R. §§ 404.967, 416.-1467. Proceeding through these three stages exhausts the claimant's administrative remedies. Following the determination at each stage, dissatisfied claimants are notified that they must proceed to the next stage within sixty days of notice of the action taken or the decision will be considered binding. *See, e.g.,* 42 U.S.C.A. § 405(b)(1); 20 C.F.R. §§ 404.-905, 404.909(a)(1), 404.955(a), 404.968(a)(1), 416.1405, 416.1409(a), 416.1433(b), 416.-1455(a), 416.1468(a). Thereafter, claimants may seek judicial review in federal district court under 42 U.S.C.A. § 405(g). *See* 42 U.S.C. §§ 421(d), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1400(a)(5) 416.1481, 422.210.

The issue in the instant case concerns the policies and practices of the Utah DDDS in evaluating applications for disability benefits at the initial and reconsideration levels. In their First Amended Complaint, Plaintiffs have alleged that the Secretary and the State Defendants (collectively, "Defendants") have "established a system of policies and a pattern of practice by which initial applications are denied on the basis of illegal and restrictive policies, procedures and standards." First Am.Compl. ¶ 2. Plaintiffs contend that Defendants deny applications for SSDI and SSI benefits without an individual assessment of the applicant's disability. Specifically, Plaintiffs allege that Defendants

apply illegal and restrictive policies and practices; that they fail to make full medical assessments; fail to apply properly the Listing of Impairments contained in 20 C.F.R. Subpart P, Appendix 1; fail to develop necessary medical evidence; fail to consider properly all relevant medical and nonmedical evidence; fail to apply properly the Medical–Vocational Guidelines contained in 20 C.F.R. Subpart P, Appendix 2; fail to consider properly the effect of the combined impairments a claimant suffers; fail to apply properly the 12–month durational requirements; fail to make disability determinations based on residual functional capacity evaluations made by physicians and fail to give proper notice to claimants.

*Id.* These policies and practices, Plaintiffs argue, directly contradict the Social Security Act, federal regulations, federal case law, the United States Constitution, Social Security Rulings, and the Program Operations Manual System. Plaintiffs maintain that Defendants' policies and practices result in two disability standards for claimants: an "illegal standard applied by [the State Defendants] at the initial and reconsideration stages" and a "correct standard applied at the hearing and Appeals Council levels by the Secretary." *Id.* ¶ 3. Because the standards are applied correctly at the federal level, Plaintiffs' only challenge to the Secretary is that she has failed to assure compliance with federal disability law by the State Defendants.

Plaintiffs do not challenge specific disability determinations, but, rather, seek relief from the State Defendants' actions, which have allegedly "resulted in hundreds of disability denials being summarily reversed when they reach the Office of Hearings and [A]ppeals on the same evidence reviewed by the Utah DDS claims examiners and medical professionals." Pls.' Mem.Resp. to State Defs.' Mot. to Dismiss at 1–2.

In her Motion to Dismiss, the Secretary contends that Plaintiffs' claims should be dismissed because this court does not have subject matter jurisdiction. The State Defendants similarly argue that this court lacks subject matter jurisdiction pertaining to Plaintiffs' claims against them. In addition, the State Defendants assert that Plaintiffs have failed to state a claim upon which relief may be granted. Finally, Plaintiffs have filed a Motion to Certify Class. These motions will be addressed in the above order.

## II. DISCUSSION

### A. SECRETARY'S MOTION TO DISMISS

#### 1. *Standard of Review*

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) is a

motion to dismiss for lack of subject matter jurisdiction. As such, Plaintiffs carry the burden of establishing jurisdiction. *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir.1991). " 'A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking.' " *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir.1988) (emphasis in original) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989).

### 2. Discussion

The Secretary argues that this court does not have subject matter jurisdiction to maintain this action, and, therefore, this action must be dismissed. Specifically, the Secretary argues that under 42 U.S.C.A. § 405(g)[3], claimants must obtain a final decision from the Secretary before seeking federal court review of the Secretary's determination. Section 405(g) provides in pertinent part:

> Any individual, after any *final decision* of the Secretary made after a hearing to which he is a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within 60 days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

42 U.S.C.A. § 405(g) (West Supp.1993) (emphasis added). To obtain a "final decision" for purposes of § 405(g), claimants are required to exhaust their administrative remedies by proceeding through a three-stage administrative appeals process. *See supra*, Pt. I.; *Bowen v. City of New York*, 476 U.S. 467, 472, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986). However, the Supreme Court has recognized that exhaustion may be waived in certain rare circumstances. *City of New York*, 476 U.S. at 483, 106 S.Ct. at 2031;

*Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976).

In *City of New York*, a class of disability claimants challenged an internal policy of the Secretary of Health and Human Services' that had the effect of denying disability benefits to numerous claimants who may have been entitled to receive them. The policy was to determine disability benefits based on a general listing of impairments instead of on individualized assessments. The class included claimants who had not exhausted their remedies. Following a seven-day trial, the district court found that the "SSA followed the covert policy alleged by respondents and that the policy was illegal." *City of New York*, 476 U.S. at 474, 106 S.Ct. at 2026 (referring to *City of New York v. Heckler*, 578 F.Supp. 1109, 1115 (E.D.N.Y.1984)). The United States Court of Appeals for the Second Circuit affirmed the trial court's decision. *City of New York v. Heckler*, 742 F.2d 729, 740 (2d Cir.1984). On appeal to the United States Supreme Court, the Secretary challenged on jurisdictional grounds the inclusion of two groups of claimants within the class: those who failed to bring a court action within sixty days of a final decision of the Secretary and those who failed to exhaust administrative remedies.

In evaluating the propriety of including within the class claimants who did not appeal their final decisions within sixty days, the Court explained that the sixty-day requirement is not jurisdictional, but rather constitutes a period of limitations. *Id.* 476 U.S. at 478, 106 S.Ct. at 2029. Noting that the limitations period had lapsed for this group of claimants, the Court then ascertained "whether equitable tolling is consistent with Congress' intent in enacting § 405(g), and whether tolling is appropriate" based on the facts before it. *Id.* at 480. The Court concluded that "on these facts the equities in favor of tolling are compelling." *Id.* Quoting the Second Circuit, the Supreme Court explained:

> Therefore, for ease of reference, judicial review of disability determinations will be referred to as review pursuant to § 405(g).

---

**3.** Although § 405(g) concerns SSDI—not SSI— benefits, § 1383(c)(3), which provides for judicial review of the Secretary's final determination of SSI benefits, expressly incorporates § 405(g).

"All of the class members who permitted their administrative or judicial remedies to expire were entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. Though they knew of the denial or loss of benefits, they did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge. Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action."

*Id.* at 480–81 (quoting *City of New York v. Heckler,* 742 F.2d 729, 738 (2d Cir.1984) (citations omitted)). Thus, the Court determined that because "the full extent of the government's clandestine policy was uncovered only in the course of this litigation, all class members may pursue this action notwithstanding the 60–day requirement." *Id.* 476 U.S. at 481, 106 S.Ct. at 2030 (quoting *City of New York,* 742 F.2d at 738); *see also Hyatt v. Heckler,* 807 F.2d 376, 380–81 (4th Cir.1986), *cert. denied sub nom. Bowen v. Hyatt,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987).

Next, the Court addressed the correctness of including claimants who failed to obtain a final decision from the Secretary as required by § 405(g). This group of claimants was comprised of two subgroups: (1) claimants for whom it was too late to exhaust their claims because the expiration of the sixty-day time limit for appealing their adverse decision barred further access to the administrative appeals process ("lapsed claims"); and (2) claimants who still had time to exhaust their administrative remedies ("live claims").

Concerning the group of claimants with lapsed claims, the Court simply concluded that "exhaustion is excused for the same reasons requiring tolling of the statute of limitations. Since '[m]embers of the class could not attack a policy they could not be aware existed' it would be unfair to penalize these claimants for not exhausting under these circumstances." *City of New York,* 476

U.S. at 482, 106 S.Ct. at 2031 (citations omitted).

Regarding those claimants who still had time to exhaust their administrative remedies, the Court explained:

Our decisions teach that the "final decision" requirement embodied in [section 405(g) ] "consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be waived by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary."

*Id.* at 482–83, 106 S.Ct. at 2031–32 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)). While the Secretary ordinarily has discretion to decide when to waive the exhaustion requirement, " 'cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate.' " *Id.* 476 U.S. at 483, 106 S.Ct. at 2031 (quoting *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900).

Relying on its decision in *Eldridge,* the *City of New York* Court explained that two factors had influenced the Court in *Eldridge* that deference to the agency's determination of finality was not necessary. *Id.* First, the challenge was " 'entirely collateral to [a] substantive claim of entitlement.' " *Id.* (quoting *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900). Second, the claim was founded " 'on the proposition that full relief cannot be obtained at a postdeprivation hearing.' " *Id.* (quoting *Eldridge,* 424 U.S. at 331, 96 S.Ct. at 901). Applying the *Eldridge* factors to the case before it, the *City of New York* Court found that the plaintiffs' claims were collateral to a claim for benefits and that the claimants would be "irreparably injured were the exhaustion requirement now enforced against them." *Id.*

Additionally, the Court noted that "application of the exhaustion doctrine is 'intensely practical.' " *Id.* 476 U.S. at 484, 106 S.Ct. at 2033 (quoting *Eldridge,* 424 U.S. at 331 n. 11, 96 S.Ct. at 900 n. 11). Accordingly, "[t]he

ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement." *Id.* In evaluating these policies, the Court determined that "the purposes of exhaustion would not be served by requiring these class members to exhaust administrative remedies" because "[u]nder these unique circumstances, there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *Id.* 476 U.S. at 485, 106 S.Ct. at 2032. Therefore, the Court held that the district court "did not err in waiving exhaustion in this case either with respect to those claimants whose time to pursue further administrative appeals had lapsed, or with respect to those claimants who still had time to pursue administrative remedies." *Id.* at 486, 106 S.Ct. at 2033.

In the case at bar, Plaintiffs and class members, as defined below in Part II.C.,[4] all satisfy the nonwaivable jurisdictional requirement that a claim for benefits has been made to the Secretary. However, by virtue of the class definition, none of the claimants has exhausted administrative remedies as required by § 405(g), and some of these claimants, because of the sixty-day limitation period, are now precluded from ever exhausting their remedies. Consequently, whether this court has jurisdiction over the claims of Plaintiffs and the proposed class members pursuant to § 405(g) depends entirely on whether Plaintiffs satisfy the test for waiver established by *City of New York*.

■ The Secretary first argues that this court does not have jurisdiction over Plaintiffs' claims because Plaintiffs have not fulfilled the first prerequisite for waiver under *City of New York*—alleging a secret policy. The Secretary, however, has misread the Court's analysis in *City of New York*. A careful review of *City of New York* reveals that an allegation of a secret policy is pertinent only to the group of claimants with lapsed claims, not to the claimants with live claims. *City of New York*, 476 U.S. at 478–82, 106 S.Ct. at 2029–31; *see also Schoolcraft v. Sullivan*, 971 F.2d 81, 85 (8th Cir.1992) (finding that district court erred in ruling that secret policy is prerequisite to waiver of exhaustion); *Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir.1991) (stating *City of New York* does not demand that clandestine policy exist to justify waiver for claimants with live claims); *Bailey v. Sullivan*, 885 F.2d 52, 64 (3d Cir.1989) (refusing to waive exhaustion for claimants with lapsed claims because there were no allegations of secret policy); *Wilkerson v. Bowen*, 828 F.2d 117, 122 n. 5 (3rd Cir.1987) (leaving undisturbed trial court's determination that allegation of secretive conduct is relevant only to class of persons whose denials had become final more than sixty days prior to filing of complaint). Thus, whether Plaintiffs have alleged a secret policy is pertinent *only* to the question of whether the court has jurisdiction over those claimants whose claims have lapsed.

The Secretary argues that Plaintiffs "do not allege a 'secret policy' that is being applied on a system-wide basis, as plaintiffs did in *City of New York*." Secretary's Mem. Supp.Mot. to Dismiss at 10. Rather, the Secretary argues, Plaintiffs challenge whether the published policy is properly applied at only the first two steps of the administrative review process.

Whether the secret policy is applied at the first two levels of administrative review, as Plaintiffs allege, or throughout the entire appeals process, as in *City of New York*, is a meaningless distinction. The Supreme Court in *City of New York* did not limit its analysis to only system-wide secret policies. Applying the same reasoning used to toll the statute of limitations for claimants who never appealed their final decisions, the *City of New York* Court waived exhaustion for claimants with lapsed claims because " '[m]embers of the class could not attack a policy they could not be aware existed.' " *City of New York*, 476 U.S. at 482, 106 S.Ct. at 2031

---

4. Plaintiffs originally defined the proposed class in their Complaint and First Amended Complaint, and then redefined it in their Motion to Certify Class. The court, however, has modified the proposed definition. *See infra*, Pt.II.C. All references to the proposed class members are to the class as defined by the court *infra*.

(citations omitted). The Court therefore ruled that "it would be unfair to penalize these claimants for not exhausting under these circumstances." *Id.; see also Kendrick v. Sullivan,* 784 F.Supp. 94, 105 (S.D.N.Y.1992).

▮ The same reasoning used by the *City of New York* Court applies equally well to the facts alleged by Plaintiffs in the instant case. Plaintiffs have alleged that the Utah DDDS applies secret policies and procedures to evaluate disability claims at the initial and reconsideration levels. *See, e.g.,* First Am. Compl. ¶ 2. Like the claimants in *City of New York,* class members who permitted their administrative remedies to expire were entitled to believe that the Utah DDDS's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. *See City of New York,* 476 U.S. at 480, 106 S.Ct. at 2030; *New York v. Sullivan,* 906 F.2d 910, 917 (2d Cir.1990). They could not have known that their adverse decisions allegedly were made on the basis of systematic procedural irregularities. As in *City of New York,* it would be unfair to penalize this group of claimants for failing to exhaust their administrative remedies when they could not have known of the alleged secretive conduct and therefore did not know that their rights may have been violated. Thus, this court waives exhaustion of remedies for claimants who failed to further appeal their claims within the sixty-day limitation.

▮ Next, this court must determine whether, under *City of New York,* exhaustion of remedies should be waived for those claimants who still have time to exhaust their remedies. Applying the factors set forth in *City of New York,* this court evaluates (1) whether the claim is collateral to a substantive claim for benefits; and (2) whether full relief can be obtained at a postdeprivation hearing. Following *City of New York,* the court also recognizes that the decision "should not be made solely by mechanical application of [these] factors, but should also be guided by the policies underlying the exhaustion requirement."[5] *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032.

The Secretary contends that Plaintiffs' claim is actually a claim for the payment of benefits and that "[t]here is nothing 'collateral' about plaintiffs' challenge here to the DDS's determinations of disability." Secretary's Mem.Supp.Mot. to Dismiss at 10. A fair reading of the complaint, however, demonstrates just the opposite. In the first paragraph of their First Amended Complaint, Plaintiffs state that their "action is not a challenge to specific disability determina-

5. As noted by the Second Circuit in *City of New York v. Heckler,* 742 F.2d 729 (2d Cir.1984), *aff'd sub nom. Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Supreme Court cases concerning waiver of exhaustion do not establish whether the individual factors deemed relevant in those decisions—collaterality, irreparable harm, and futility—each must be present before a court may dispense with exhaustion. *Id.* at 736. That court noted that the "Supreme Court has approved judicial waiver where plaintiff's legal claims are collateral to the demand for benefits, where exhaustion would be futile, *or* where the harm suffered pending exhaustion would be irreparable." *City of New York,* 742 F.2d at 736 (emphasis added). The Second Circuit then adopted the view that "no one factor is critical. We have adopted a more general approach, balancing the competing considerations to arrive at a just result under the circumstances presented." *Id.* The United States Supreme Court, in deciding the *City of New York* case on appeal, did not explicitly answer the Second Circuit's request for guidance, but it apparently left room in its analysis for the more general balancing approach espoused by the Second Circuit. The Supreme Court, after evaluating the *Eldridge* factors—collaterality and irreparable harm—also stated that "application of the exhaustion doctrine is " 'intensely practical' " and that the ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement." *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032 (quoting *Eldridge,* 424 U.S. at 331 n. 11, 96 S.Ct. at 900 n. 11).

Thus, even though this court finds all three *City of New York* factors satisfied in this case, it does not hold that all three factors *must* be met to justify waiving exhaustion of remedies. *See, e.g., Eldridge,* 424 U.S. at 330 n. 11, 96 S.Ct. at 900 n. 11 ("statutorily created finality requirements should ... be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered...."); *New York v. Sullivan,* 906 F.2d 910, 918 (2d Cir.1990) ("No one element is critical to the resolution of the issue."); *Kendrick,* 784 F.Supp. at 100 ("No one element is critical to the decision ...").

tions made by defendants, but to the standards, policies and procedures defendants utilize in determining disability at the initial and reconsideration levels." First Am. Compl. ¶ 1.

In *City of New York*, the Court determined that the plaintiffs claim was collateral because "[t]he class members neither sought nor were awarded benefits ... but rather challenged the Secretary's failure to follow the applicable regulations." [6] *City of New York*, 476 U.S. at 483, 106 S.Ct. at 2031. Similarly, in *Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir.1991), the court determined that the plaintiffs' claim was collateral because the validity of the challenged policy would stand independent of the ultimate merits of each plaintiff's claim for benefits. The court further explained that even after new standard of eligibility is applied, some claimants will fail to qualify for benefits. *Id.* at 614; *see also Schoolcraft v. Sullivan*, 971 F.2d 81, 86 (8th Cir.1992) (stating that challenge to Secretary's failure to ensure that uniform standards are applied at all levels of review is sufficiently collateral to claim for benefits); *Wilkerson v. Bowen*, 828 F.2d 117, 121–22 (3d Cir.1987) (finding that challenge to Secretary's alleged policy of failing to follow law concerning disability claims based on alcoholism is collateral claim within meaning of *City of New York*); *Hyatt v. Heckler*, 807 F.2d 376, 379–80 (4th Cir.1986), *cert. denied sub nom. Bowen v. Hyatt*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987). (ruling that claims were collateral because class asked only that their claims for benefits be remanded to Secretary for reconsideration in accordance with SSA as interpreted by that circuit); *Kendrick v. Sullivan*, 784 F.Supp. 94, 100 (S.D.N.Y.1992) (concluding that claim was collateral because relief sought by proposed class members was readjudication of their benefits claims, not grant of benefits).

In the instant case, Plaintiffs have not requested a judgment awarding them disability benefits. Nor are Plaintiffs seeking to correct inadvertent errors or occasional mistakes that ordinarily occur, as the Secretary has alleged.[7] While this court is not currently in a position to assess the merits of Plaintiffs' claims, Plaintiffs' allegations advance beyond occasional mistakes. Plaintiffs are seeking vindication of their right to fair procedures at the initial and reconsideration stages of the determination process. As in *Marcus*, the validity of the State Defendants' policies and practices stands independent of the merits of any class member's claim for benefits. Therefore, Plaintiffs' challenge to the procedural irregularities at the Utah DDDS and to the Secretary's failure to ensure that uniform standards are applied at all levels of review is collateral to their claims for disability benefits.

In addition, the Secretary maintains that Plaintiffs in the case at bar do not allege an irreparable injury similar to that in *City of New York*. The Court in *City of New York* determined that the claimants would be irreparably harmed by exhausting their remedies because they "not only were denied the benefits they were seeking, but '[t]he ordeal of having to go through the administrative appeal process may trigger a severe medical setback.'" *City of New York*, 476 U.S. at 483, 106 S.Ct. at 2031 (quoting *City of New York v. Heckler*, 578 F.Supp. 1109, 1118 (E.D.N.Y.1984)).

The *City of New York* Court did not limit its finding of irreparable harm solely to such instances, however, and numerous courts have found irreparable harm in situations analogous to Plaintiffs'. For example, in *Schoolcraft*, the plaintiffs filed a class action suit against the Secretary and against the

---

6. The *City of New York* Court's caveat is appropriate to the case at bar: the "holding today does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings. These claimants stand on a different footing from one arguing merely that an agency incorrectly applied its regulation." *City of New York*, 476 U.S. at 485, 106 S.Ct. at 2032. Similarly, Plaintiffs in this case have alleged that the Utah DDDS utilizes a system-wide unrevealed policy that is inconsistent

in critically important ways with established regulations.

7. The Secretary argues that "[i]t has never been expected that an organization so vast as the SSA can achieve absolute perfection or consistency. Plaintiffs have alleged, at most, isolated instances of procedural error...." Secretary's Mem. Supp.Mot. to Dismiss at 7 (citations omitted).

state agency charged with making disability determinations. The suit challenged the procedures and standards applied by the state agency to disability claims involving chronic alcoholism or other chemical dependency. In finding that the claimants had made a sufficient showing of irreparable harm, the *Schoolcraft* court noted that one claimant was homeless until he was awarded benefits by an ALJ fourteen months after he had applied for benefits, and that others were living on the streets because they could not find housing they could afford. *See Schoolcraft*, 971 F.2d at 87 n. 10. Similarly, in *Marcus*, the Seventh Circuit found that "[a] delayed receipt of disability benefits ... cannot suffice to make the claimant whole," and that "[a]ny delay potentially subjects claimant to deteriorating health, and even death. Claimants need to receive funds promptly because they use their benefits to purchase the very necessities of life." 926 F.2d at 614. Moreover, the court in *Wilkerson* reversed the trial court, finding that irreparable harm existed because the proposed intervenors in that case had "serious medical problems of a physical and emotional nature; they subsist on minimal payments from the Pennsylvania Department of Public Welfare; they lack many basic necessities, all of which exacerbates their impaired condition." 828 F.2d at 122; *see also New York v. Sullivan*, 906 F.2d 910, 919 (2d Cir.1990) (recognizing that denial of benefits potentially subjected claimants to deteriorating health); *Bailey v. Sullivan*, 885 F.2d 52, 65 (3d Cir.1989) (stating fact that claimants have severe mental or physical conditions and few resources other than requested benefits justified finding irreparable harm); *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir.1989) (noting that back payments cannot erase either experience or entire effect of several months without food, shelter, or other necessities); *Kendrick*, 784

F.Supp. at 101 (recognizing that receipt of retroactive benefits cannot compensate for financial and psychological hardship endured by living without benefits during appeals process).

Plaintiffs must raise a colorable showing of irreparable injury, which is one that is not " 'wholly insubstantial, immaterial, or frivolous.' " *Briggs*, 886 F.2d at 1140 (citations omitted). Although the Secretary argues that Plaintiffs "will suffer no special harm as the result of exhausting their administrative remedies," Secretary's Mem.Supp.Mot. to Dismiss at 12, to so find would be contrary to both common law and common sense. Plaintiffs in this case have sufficiently alleged that if they are required to exhaust their administrative remedies, they will suffer the types of harm other courts have found to constitute irreparable harm. Plaintiffs have alleged that being without SSDI or SSI benefits for a year or more often results in "homelessness, the denial of medical treatment and rehabilitation and other harm." [8] First Am. Compl. ¶ 4. Plaintiffs further maintain that the persons they seek to represent "commonly are deprived of most, if not all, of the income required to secure basic necessities, such as food, clothing, shelter, transportation and medical care." *Id.* ¶ 148. The fact that some claimants will appeal their decisions and later get the relief to which they are entitled will not erase the ramifications of several months without food, shelter, or other necessities; nor will that fact nullify the ordeal they will undergo simply to obtain the procedure to which they were entitled in the first place. Thus, Plaintiffs' allegations of irreparable harm are not insubstantial, immaterial, or frivolous. Moreover, the *City of New York* Court's admonition is particularly germane to the case at bar: courts "should be especially sensitive to this kind of harm

---

**8.** Specifically, for example, Plaintiffs have alleged that as a result of Defendants' illegal practices and polices, Plaintiff Goodnight has suffered "anxiety over possible eviction, stress requiring psychological counseling, ... forced reliance on food pantries and the pressure of unpaid bills and possible bankruptcy." First Am.Compl. ¶ 87. Plaintiff Rossborough "has suffered severe mental distress, including chronic depression." *Id.* ¶ 122. Plaintiff Harvey has suffered "a lack of funds for proper housing, a lack of food and

an inability to receive proper medical treatment." *Id.* ¶ 134. Plaintiff Banks "has been deprived of medical care, has been evicted twice from his home, had his utilities shut off, his home foreclosed on and suffered severe stress which worsens his depression and suicidal ideation." *Id.* ¶ 112. Further, Plaintiffs allege that "without his disability benefits, [Banks] has been without sufficient financial support to meet his daily needs including medical care." *Id.*

where the government seeks to require a claimant to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032; *Schoolcraft,* 971 F.2d at 87; *New York,* 906 F.2d at 918; *Hyatt v. Heckler,* 807 F.2d 376, 380 (4th Cir.1986), *cert. denied sub nom. Bowen v. Hyatt,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987); *Kendrick v. Sullivan,* 784 F.Supp. 94, 101 (S.D.N.Y.1992).

Finally, this court must evaluate whether the policies underlying the exhaustion requirement would be undermined if exhaustion is waived in this case. In *City of New York,* the Court explained that

> "[e]xhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise and to compile a record which is adequate for judicial review."

*City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975)); *see also Heckler v. Lopez,* 463 U.S. 1328, 1336, 104 S.Ct. 10, 14, 77 L.Ed.2d 1431 (1983) (ruling that exhaustion should be required when claim "could benefit from further factual development and refinement through the administrative process"). The *City of New York* Court determined that requiring exhaustion in that case would not serve the purposes the exhaustion requirement was designed to further. Specifically, the Court noted that the district court "found a systemwide unrevealed policy that was inconsistent in critically important ways with established regulations," and that "the policy did not depend on the particular facts of the case before it; rather, the policy illegally ignored those facts." *City of New York,* 476 U.S. at 485, 106 S.Ct. at 2032. Therefore, the Court reasoned, "there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *Id.* Moreover, the Court emphasized that

the relief afforded by the District Court is fully consistent with the policies underlying exhaustion. The court did not order that class members be paid benefits. Nor does its decision in any way interfere with the agency's role as the ultimate determiner of eligibility under the relevant statutes and regulations. Indeed, by ordering simply that the claims must be reopened at the administrative level, the District Court showed proper respect for the administrative process.

*Id.*

Similarly, in the instant case, the policies underlying exhaustion of remedies would not be undermined by waiving exhaustion. This court will not interfere prematurely in the administrative process because it will allow the SSA to determine each claimant's eligibility for benefits and will make no awards to claimants. Plaintiffs have sought only declaratory and injunctive relief. Further, as in *City of New York,* this is not a case that could benefit from further factual development or from the agency's experience or expertise. The administrative process available to disability claimants does not provide an adequate means of developing the facts concerning the alleged unfairness of the claimants' application process at the Utah DDDS. Nor is this a case where exhaustion would permit the agency an opportunity to correct its own errors: it is simply not realistic to "expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient...." *Mathews v. Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900.

The Secretary argues, however, that "exhaustion of administrative remedies would remedy the errors of which each named plaintiff complains." Secretary's Mem.Supp. Mot. to Dismiss at 6. In support of this argument that exhaustion should not be excused, the Secretary relies primarily on the district court's opinion in *Schoolcraft v. Sullivan,* 753 F.Supp. 1478, 1484–89 (D.Minn. 1991), *vacated,* 971 F.2d 81 (8th Cir.1992). The Secretary cites that opinion as an example of a court that refused to excuse the exhaustion requirement largely because the plaintiffs in that case, as in the case at hand,

had conceded that exhaustion worked—more particularly, that ALJ review rectified any error that may have occurred at the state agency level of review. *See* Secretary's Mem.Supp.Mot. to Dismiss at 16.

After the Secretary filed her Motion to Dismiss, however, *Schoolcraft* was vacated on appeal by the Eighth Circuit. *See Schoolcraft*, 971 F.2d at 89. Under circumstances similar to the case at bar, the Eighth Circuit disagreed with the district court's finding that exhaustion was not futile and concurred with the "claimants' representation that eventual correction of the errors of DDS will not cure the alleged harm." *Id.* at 87. The court explained that "even though exhaustion may often result in benefits being awarded it 'never removes or corrects the systemic errors at the initial and reconsideration stage[s] of the administrative process.'" *Id.* (citations omitted). The court recognized that to require exhaustion in this circumstance "would allow 'SSA [to] operate indefinitely ... with two standards ... one for claimants who seek review by the Appeals Council, and one for claimants who do not.'" *Id.* (quoting *Jones v. Califano*, 576 F.2d 12, 19 (2d Cir.1978)).

Likewise, in the instant case, an ALJ's eventual correction of the alleged errors of the Utah DDDS will not cure the harm because an ALJ's decision will never correct the alleged systemic errors at the initial and reconsideration stages of the administrative process. *See New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir.1990) (finding that individual eligibility decisions could not vindicate procedural right plaintiffs sought to obtain); *Mental Health Ass'n v. Heckler*, 720 F.2d 965, 971 (9th Cir.1983) (stating that fortuity of individual recompense should not result in evasion of review of collateral procedural issue). To refuse to waive exhaustion in light of Plaintiffs' allegations would leave claimants with no possible means with which to challenge alleged clandestine policies and procedures applied at the state level in determining eligibility for disability benefits. Judicial review of the state agency's procedures would be foreclosed entirely. The SSA would be permitted to operate indefinitely with two standards—one for claimants who

persevere through the system and seek review by the Appeals Council, and one for claimants who trust that the Government determined their eligibility according to the law. Again, this court will heed the warning of the *City of New York* Court that it must be especially cognizant of government efforts to require a claimant to exhaust administrative remedies "merely to enable them to receive the procedure they should have been afforded in the first place." *City of New York*, 476 U.S. at 484, 106 S.Ct. at 2032; *see also Touche Ross v. Securities & Exchange Comm'n*, 609 F.2d 570, 577 (2d Cir.1979) (emphasizing that exhaustion is futile when very administrative procedure under attack is one that agency says must be exhausted). The court will not use the exhaustion of remedies doctrine to shield potential abuses at the first levels of disability determination. The court therefore finds that waiving exhaustion in this case would not frustrate the policies of exhaustion of administrative remedies. Under *City of New York*, all relevant factors in this case favor waiving exhaustion of remedies, which provides this court with jurisdiction under § 405(g) to hear Plaintiffs' claims regarding the Secretary.

As alternate grounds for jurisdiction, Plaintiffs argue that this court has jurisdiction under 28 U.S.C.A. § 1361 (West 1976), 42 U.S.C.A. § 1983 (West 1981), and 28 U.S.C. §§ 2201–02 (West 1982 & Supp.1993). The court's finding of jurisdiction pursuant to § 405(g) obviates the need to discuss alternate grounds for jurisdiction. The court notes, however, that numerous other courts, addressing similar circumstances, have found mandamus jurisdiction under § 1361. *See City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir.1984), *aff'd on other grounds sub nom. Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Kuehner v. Schweiker*, 717 F.2d 813, 819 (3d Cir.1983), *cert. granted, J. vacated on other grounds*, 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); *Mental Health Ass'n v. Heckler*, 720 F.2d 965, 968–69 (8th Cir.1983); *Ellis v. Blum*, 643 F.2d 68, 78–82 (2d Cir. 1981) (Friendly, J.) (providing extensive discussion on mandamus jurisdiction); *Aldrich v. Schweiker*, 555 F.Supp. 1080, 1089 (D.Vt. 1982). The court in *Schoolcraft*, noted that

the Eighth Circuit and other courts have found an alternative basis for jurisdiction under § 1361 in analogous contexts. *School-craft,* 971 F.2d at 88. The court then vacated the district court's order dismissing the claim under mandamus, stating that "[t]he district court may well choose to issue a writ of mandamus requiring the Secretary to direct the state officials to follow the Secretary's procedures and the standards of this circuit." *Id.*

## III. THE STATE DEFENDANTS' MOTIONS TO DISMISS

### A. SUBJECT MATTER JURISDICTION

■ Plaintiffs allege that this court has jurisdiction over the State Defendants under 28 U.S.C.A. § 1331 (West 1993) and 28 U.S.C.A. § 1343(a)(3) (West Supp.1993). The court will review this claim under the standard set forth *supra* Pt. II.A.1

Regarding federal question jurisdiction under 28 U.S.C.A. § 1331, the State Defendants assert that 42 U.S.C.A. § 405(h) (West Supp. 1993) prohibits general federal question jurisdiction pertaining to Plaintiffs' claims against them. Section 405(h) provides in part: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C.A.

§ 405(h). As its wording indicates, however, § 405(h) expressly applies only to the United States and its officials. *Schoolcraft,* 971 F.2d at 88; *Kuehner,* 717 F.2d at 816. The State Defendants are neither officers nor employees of the federal government. *See School-craft,* 971 F.2d at 88–89; *Kuehner,* 717 F.2d at 816. Although the Utah DDDS is responsible for carrying out the Secretary's regulations and policies, it operates pursuant to state statutory authority.[9] *See Schoolcraft,* 971 F.2d at 88. Therefore, § 405(h) is not controlling and Plaintiffs may bring an action against the State Defendants pursuant to § 1331.[10] Additionally, *other courts have found federal question jurisdiction in similar cases, wherein the plaintiff alleged the state agency charged with making disability determinations was failing to apply the proper criteria to disability determinations. See Schoolcraft,* 971 F.2d at 89; *Kuehner,* 717 F.2d at 816.

In arguing that they should be dismissed, the State Defendants mistakenly rely on readily distinguishable cases in which state defendants were dismissed pursuant to § 405(h) because courts found that the claims were actually disguised disputes with the Secretary. For example, the State Defendants rely on *Rivera v. Heckler,* 568 F.Supp. 235 (D.N.J.1983), in which the court noted that the "[p]laintiffs allege not that the state defendants' wrong is their misapplication of the Secretary's regulations, but, rather, their

---

9. State Defendant Scott Bean is the State Superintendent and executive officer of the State Board of Education, deriving his authority under Utah Code section 53A–1–301. Utah Code Ann. § 53A–1–301 (1992). State Defendant Blaine Peterson is the Executive Director of the Utah State Office of Rehabilitation, deriving authority under the Utah State Office of Rehabilitation Act. *Id.* §§ 53A–24–105 to –110 (1992 & Supp.1993). Mr. Peterson's functions include cooperating with federal or state government entities in administering programs and program funds. *Id.* § 53A–24–105(2). The purpose for establishing the Office of Rehabilitation is as follows:

(1) It is the intent of the Legislature that all activities of the office and its subordinate components be conducted in such a manner that persons with handicaps will be assisted, so far as reasonably possible, to take their rightful place in open society as independent and self-supporting individuals.

(2) Neither the office nor any of its parts may assist or support any activity that will result in unnecessary continuation of a depen-

dent or isolated state or unnecessarily separate persons with handicaps from open society. *Id.* § 53A–24–110. State Defendant Charles Schmitt is the Administrator of the Utah DDDS, established pursuant to Utah Code section 53A–24–501. Utah Code § 53A–24–501 (1992). The Utah DDDS is within the Utah State Office of Rehabilitation. *Id.* Mr. Schmitt is charged with administering "the division in accordance with the direction of the executive director, board policies, and applicable state and federal laws and regulations." *Id.* § 53A–24–502(2) (Supp. 1993). The law further provides that "DDDS may perform disability determination services authorized under state or federal law or regulation." *Id.* § 53A–24–503 (Supp.1993).

10. This section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 1331 (West 1993).

adherence to the Secretary's nonacquiescence directive." *Id.* at 243. The *Rivera* court then barred jurisdiction over the state defendants under § 1331 because the plaintiffs' dispute was with the Secretary. *Id.; see also Aldrich v. Schweiker,* 555 F.Supp. 1080, 1086 (D.Vt.1982) (barring § 1331 jurisdiction over state defendant because plaintiffs' dispute was actually with Secretary). Conversely, in the present case, Plaintiffs have clearly alleged that their challenge to the State Defendants is the misapplication of federal regulations, not a claim that the State Defendants are following wrongful policies promulgated by the Secretary.

Furthermore, the State Defendants have relied on an incorrect interpretation of the Second Circuit's holding in *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981). The State Defendant's assert that the *Ellis* court found that the "[s]tate officers administering the program were within the ambit of Section 405(h) and therefore not proper parties because they were operating under color of federal law." State Def.s' 'Mem.Supp.Mot. to Dismiss at 8. However, the *Ellis* court never ruled that § 405(h) precluded subject matter jurisdiction against the state defendants. Instead, the *Ellis* court explained:

> On its face § 405(h)'s ban on actions "against the United States, the Secretary, or any officer or employee thereof" does not apply to a suit against state officials. However, a forceful argument can be made that the state officials administering the disability-benefits program are acting under color of federal law as mere agents of the Secretary, and as such are within the ambit of § 405(h). To hold otherwise arguably would invite applicants for Title II benefits to circumvent §§ 405(g) and (h) by bringing suit under § 1331 against the state officials instead of the Secretary, particularly now that the amount-in-controversy requirement of § 1331 has been eliminated as to all defendants.

While we have little doubt that, for the reasons indicated, the scope of § 405(h) extends to suits in which claims against state officials are merely disguised disputes with the Secretary of the sort described in §§ 405(g) and (h), that is not this case.

*Ellis,* 643 F.2d at 76. Thus, the *Ellis* court did not hold that the state defendants before that court fell within § 405(h). Furthermore, without ruling on the issue, this court agrees that § 405(h) extends to suits in which the claims against the state officials are actually disguised disputes with the Secretary. As in *Ellis,* however, that is not this case.

The *Ellis* court went on to explain that the plaintiff's grievances against the state defendants and the Secretary were separate and distinct. The plaintiff in *Ellis* had alleged that the state defendants " 'have been and are carrying out a practice and policy of making determinations of termination of ... disability benefits without providing the recipients with adequate written notices," and that "this bad-faith practice was in violation of the procedures authorized by the Secretary as contained in SSA's Manual as well as in violation of the Act and the due process clause of the Fifth and Fourteenth Amendments." *Id.* at 76. The plaintiff in *Ellis* had no quarrel with the Secretary's procedures and charged the Secretary solely with failing to carry out her mandatory duty to compel the state defendants to comply with federal law. *Id.* at 76. The court held that "[t]he claims against the state and federal defendants being thus distinct, there is no reason to extend the ban of § 405(h) to preclude § 1331 jurisdiction over the claims ... against the state defendants in this case." *Id.; see Town Court Nursing Ctr., Inc. v. Beal,* 586 F.2d 266, 279 (3d Cir.1978) (en banc).

Like the plaintiff in *Ellis,* Plaintiffs and class members in the instant case have separate and distinct claims against the Secretary and the State Defendants. More specifically, Plaintiffs have alleged that the State Defendants are applying secret and illegal policies and procedures, resulting in unfair denials for many deserving disability applicants. On the other hand, Plaintiffs have no quarrel with the Secretary's procedures and have charged the Secretary only with failing to carry out her duty to compel the State Defendants to comply with the law. Thus, no

reason exists for extending § 405(h)'s ban to preclude § 1331 jurisdiction over the State Defendants. Accordingly, because Plaintiffs here have alleged a federal question[11] and because the State Defendants do not fall within the scope of § 405(h)'s preclusion of federal question jurisdiction, this court has jurisdiction over the State Defendants. Because the court finds jurisdiction predicated on § 1331, there is no need to discuss whether 28 U.S.C.A. § 1343(a)(3) provides a basis for jurisdiction.[12]

## B. FAILURE TO STATE A CLAIM

The State Defendant's also allege that Plaintiffs do not assert a claim upon which relief can be granted, stating that "[t]he allegations of the complaint are conclusory and simply claim generalized non-compliance with federal requirements for making disability determinations." State Def.'s Mem.Supp. Mot. to Dismiss at 12.

### 1. Standard of Review

■ In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must look only to the complaint. *Jackson v. Integra, Inc.,* 952 F.2d 1260, 1261 (10th Cir.1991). The allegations in the complaint must be accepted as true and all facts must be construed in the light most favorable to the plaintiff. *Arnold v. McClain,* 926 F.2d 963, 965 (10th Cir.1991); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991); *Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs,* 811 F.2d 1371, 1374 (10th Cir.

1987). The motion must be denied "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lessman v. McCormick,* 591 F.2d 605, 607–08 (10th Cir.1979) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### 2. Discussion

■ Plaintiffs have alleged that the State Defendants have "established a system of policies and a pattern of practice by which initial applications are denied on the basis of illegal and restrictive policies, procedures and standards." First Am.Compl. ¶ 2. Plaintiffs assert that the State Defendants deny applicants for SSDI and SSI benefits without an individual assessment of their disability. Specifically, Plaintiffs allege that the State Defendants

apply illegal and restrictive polices and practices; that they fail to make full medical assessments; fail to apply properly the Listing of Impairments contained in 20 C.F.R. Subpart P, Appendix 1; fail to develop necessary medical evidence; fail to consider properly all relevant medical and nonmedical evidence; fail to apply properly the Medical–Vocational Guidelines contained in 20 C.F.R. Subpart P, Appendix 2; fail to consider properly the effect of the combined impairments a claimant suffers; fail to apply properly the 12–month durational requirements; fail to make disability

11. Plaintiffs have alleged a violation under 42 U.S.C.A. § 1983 (West 1981) that the State Defendants, acting under color of state law, violated the federal regulations and applicable federal law, as well as the United States Constitution, by failing to apply the proper criteria. *See Schoolcraft,* 971 F.2d at 88.

12. The court notes, however, that other courts addressing similar issues have not found jurisdiction based on 28 U.S.C.A. § 1343(a)(3). *See Schoolcraft,* 971 F.2d at 88; *Kuehner,* 717 F.2d at 816–17. Section 1343(a)(3) states:

To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United State or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

28 U.S.C.A. § 1343(a)(3) (West Supp.1993). The jurisdictional requirement of 28 U.S.C.A. § 1343(a)(3) is that there must be a deprivation of a right secured by federal law that provides for equal rights of all persons. The Social Security Act does not concern equal rights. As the *Schoolcraft* court explained, "'[t]he Social Security Act does not deal with the concept of 'equality' or with the guarantee of 'civil rights' as those terms are commonly understood.'" *Schoolcraft,* 971 F.2d at 88 (quoting *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 621, 99 S.Ct. 1905, 1917, 60 L.Ed.2d 508 (1979).

Furthermore, the court in *Kuehner* recognized that "[s]ince the elimination of jurisdictional amount in 28 U.S.C. § 1331 the jurisdictional grant in 28 U.S.C. § 1343 appears to have little practical utility." 717 F.2d at 816 n. 1.

determinations based on residual functional capacity evaluations made by physicians and fail to give proper notice to claimants. *Id.* ¶ 2. These policies and practices, Plaintiffs argue, directly contradict the Social Security Act, federal regulations, federal case law, the United States Constitution, Social Security Rulings, and the Program Operations Manual System. Plaintiffs maintain that Defendants' policies and practices result in two disability standards for claimants: an illegal standard applied by the State Defendants at the initial and reconsideration stages and a correct standard applied by the federal ALJs and the Appeals Council.

Taking the allegations as true, this court cannot say that it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Therefore, Plaintiffs have adequately pleaded a claim for which relief may be granted.

C. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

In their Motion for Class Certification, Plaintiffs seek to certify a class consisting of:

All persons who applied for and were denied, or were terminated from, the receipt of Title II or Title XVI disability benefits by the Utah Disability Determination Service since October 9, 1984. The class excludes persons who have been found disabled after successful administration or court appeal, or who were denied or terminated because they have returned to substantial gainful activity or who are not eligible for disability benefits for reasons not related to disability.

Pl.s' Mot. for Class Certification at 1. It is left to the discretion of the court to determine whether a class may be certified. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981) *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.1982). However, a court must adhere to the provisions of Federal Rule of Civil Procedure 23 ("Rule 23"). *Gulf Oil,* 452 U.S. at 100, 101 S.Ct. at 2200. In making the decision whether to certify, a court should be cognizant that "certification

is conditional and may be altered, expanded, subdivided, or vacated as the case progresses towards resolution on the merits." *Spivak v. Petro–Lewis Corp.,* 120 F.R.D. 693, 694–95 (D.Colo.1987); *see also Miera v. First Sec. Bank of Utah,* 925 F.2d 1237, 1242 (10th Cir.1991). Because class certification is subject to later modification, "if there is an error made, let it be in favor of, and not against the maintenance of the class action." *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)); *Smith v. MCI Telecomms. Corp.,* 124 F.R.D. 665, 674 (D.Kan. 1989); *Spivak,* 120 F.R.D. at 695.

Before even addressing the requirements of Rule 23, Defendants contend that members of the putative class have not exhausted their administrative remedies as required by § 405(g), and that many have failed to seek timely judicial review of final administrative denials of benefits. With one exception, this contention has been disposed of above. *See supra* Pt. II.A.2. This court has waived the exhaustion of remedies requirement for Plaintiffs and proposed class members with live claims whose applications were denied at the initial and reconsideration stages of the application process and for proposed class members who have lapsed claims. However, in their Motion for Class Certification, Plaintiffs for the first time include in the proposed class recipients of disability benefits whose benefits have been terminated ("terminated claimants"). Throughout their First Amended Complaint, Plaintiffs did not allege any facts regarding this subclass. Because this subclass of terminated claimants was not originally mentioned in Plaintiffs' complaint, the question of whether this court has subject matter jurisdiction pertaining to this subclass has not been argued by the parties, and it is not apparent to the court.

As mentioned *supra,* Pt.II.A.2, the United States Supreme Court has held that one of the two jurisdictional requirements—presentment of a claim to the Secretary—may not be waived. *See Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). The court recognizes that some courts have held that mere termination of benefits satisfies the presentment

**1582**

requirement. *See Lopez v. Heckler,* 725 F.2d 1488, 1503 (9th Cir.1984); *Kuehner v. Schweiker,* 717 F.2d 813, 817 (3d Cir.1983) *cert. granted, J. vacated on other grounds,* 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984). However, others have recognized that mere termination is insufficient unless terminated recipients have made at least an informal communication with the SSA either prior or subsequent to receipt of a termination notice. *See City of New York v. Heckler,* 742 F.2d 729, 735 (2d Cir.1984), *aff'd sub nom. Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Wheeler v. Heckler,* 719 F.2d 595, 600 (2d Cir.1983); *Mental Health Ass'n v. Heckler,* 720 F.2d 965, 969 (8th Cir.1983).

 In the present case, Plaintiffs do not discuss whether terminated recipients have communicated with the SSA. Because jurisdiction of this subclass has not been argued by the parties, and given the fact that additional problems exist concerning this subclass' satisfaction of Rule 23 requirements, *see infra,* the court will not now certify a class that includes terminated claimants.

 However, because the remainder of the proposed class meets the jurisdictional requirements as set forth *supra* Pt. II.A.2, the court will now consider certifying a class defined as follows: [13]

> All persons who applied for and were denied the receipt of Title II or Title XVI disability benefits by the Utah DDDS since October 9, 1984. The class excludes persons who appealed the Utah DDDS' determination beyond the Utah DDDS, persons who were denied benefits because they have returned to substantial gainful activity, and persons who are not eligible for disability benefits for reasons not related to disability.

 The party seeking to invoke Rule 23 carries the burden of demonstrating that all of the prerequisites to utilizing the class action procedure have been satisfied. *Rex v.*

*Owens ex rel. Oklahoma,* 585 F.2d 432, 435 (10th Cir.1978); *Smith,* 124 F.R.D. at 674. Rule 23(a) sets forth four requirements for one or more members of a class to sue as representative parties on behalf of all:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The court considers these factors in the above-mentioned order.

### 1. Numerosity

 Rule 23(a)(1) requires that the class be so numerous that joinder of all members would not be practical. To satisfy this requirement, Plaintiffs "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex,* 585 F.2d at 436; 3B James W. Moore & John E. Kennedy, *Moore's Federal Practice,* § 23.05[3] (2d ed. 1987). Courts have commonly recognized the desirability of providing early class certification and have found the allegations in the pleadings concerning the number of individuals involved sufficient to meet the showing of numerosity. *Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 275–76 (10th Cir.1977). Moreover, when injunctive relief is the only relief requested, even speculative or conclusory representations regarding numerosity will suffice to permit class certification. *Horn,* 555 F.2d at 275–76.

 In this case, Plaintiffs have estimated that the proposed class numbers approximately 33,000. Pl.'s Mem.Supp.Mot. for Class Certification at 6–7. Plaintiffs' inability to provide an exact number does not preclude class certification. Considering the estimated number of class members, joinder would certainly not be practical in this action.

---

**13.** References to the proposed class below will refer to this definition set forth by the court, which is substantially the definition proposed by Plaintiffs, absent inclusion of those whose benefits have been terminated. In addition, the court has also explicitly excluded from Plaintiffs' pro-posed definition claimants who appealed their Utah DDDS denials to the SSA's Office of Hearings and Appeals. While this exclusion is implicit in Plaintiffs' complaint and various memoranda, the court explicitly adds it to the class definition to avoid any possible confusion.

Thus, Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Yet, the class representatives' claims need not involve the same facts or law pertinent to all class members, provided there exists a common element of fact or law. *Senter v. General Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir.1976), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979) ("It is unlikely the differences in the factual background of each claim will affect the outcome of the legal issue."). Thus, class members need not be in identical circumstances; rather, class members must have the same basis for challenging a defendant's actions. *Ortiz v. Eichler*, 616 F.Supp. 1046, 1055–56 (D.Del. 1985), *aff'd*, 794 F.2d 889 (3d Cir.1986).

In the instant case, all Plaintiffs and members of the proposed class have a common basis for their claims. Specifically, all class members have had their applications for disability benefits denied, allegedly due to Defendants' maintenance of a system of clandestine policies and practices in numerous areas of the disability determination process, *see supra* Pt. I., which violate the Social Security Act, federal regulations, federal case law, and the United States Constitution. Thus, all members of the class are affected by Defendants' policies and practices in determining whether they qualify for disability benefits.[14] Therefore, the commonality requirement is satisfied in the case at hand.

### 3. Typicality

Under Rule 23(a)(3), the claims pertaining to the named class members must be typical of the claims of the proposed class. The typicality standard does not require that the named plaintiffs "be in a position identical to that of every member of the putative class." *Smith v. MCI Telecomms. Corp.*, 124 F.R.D. 665, 675 (D.Kan.1989); *see also Anderson*, 690 F.2d at 800; *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975); *Aguinaga v. John Morrell & Co.*, 602 F.Supp. 1270, 1279 (D.Kan.1985). Instead, typicality requires that Plaintiffs " 'possess the same interest and suffer the same injury as the class members.' " *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982) (citations omitted). If the alleged harm suffered by the Plaintiffs "is of the same type as the harm suffered by members of the proposed class, the typicality requirement is met" even if the degree of Plaintiffs' harm may differ from that of the proposed class members. *Smith*, 124 F.R.D. at 675.

In this case, the named Plaintiffs possess the same interest as the class: to insure that the State Defendants properly apply the law at the initial and reconsideration stages of the disability determination process. They seek a court determination of the validity of the State Defendants' practices and policies in the areas delineated in their complaint. Plaintiffs have suffered the same injury as the class members: they all have had a denial of disability determinations, allegedly due to clandestine and illegal policies and practices. Plaintiffs seek the identical relief as all class members: they all seek evaluation of their claims for disability under the standards required by federal law. Because of these similarities, Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).[15]

---

14. Even if claimants whose benefits had been terminated were within the jurisdiction of this court, this court could not say with certainty that the commonality requirement would be satisfied for this subgroup. Plaintiffs have not discussed whether Plaintiffs' claims involve questions of law that are common to the claims of recipients whose benefits were terminated. The court recognizes that other courts in similar situations have included terminated recipients within the class. *City of New York*, 476 U.S. at 473, 106 S.Ct. at 2026; *Day v. Sullivan*, 794 F.Supp. 801, 808 (S.D.Ohio 1992). In this case, however, Plaintiffs have alleged no facts to support the conclusion that the commonality requirement would be met.

15. Even if the court had determined that it had subject matter jurisdiction over the subclass of disability benefit recipients whose claims were terminated, it is unclear to the court whether Plaintiffs' claims are typical of the claims of this subclass of terminated claimants. Plaintiffs have alleged no facts to support the conclusion that the typicality requirement would be met in this

#### 4. Adequacy of Representation

■ Rule 23(a)(4) requires that the Plaintiffs be suitable parties who will fairly and adequately protect the interests of the proposed class. This standard requires that the named plaintiffs not have interests that are antagonistic to those of the class, and that the named plaintiffs' attorneys be qualified to conduct the litigation as a class action. *Smith,* 124 F.R.D. at 676.

In this case, Plaintiffs have the same interests as the proposed class members: correction of the Utah DDDS' improper polices and practices in determining disability. Plaintiffs have no interests that would be antagonistic to the proposed class. Additionally, Plaintiffs' attorneys are qualified to conduct the litigation as a class action because they have many years of experience in SSDI and SSI disability law and also have experience in federal class action litigation. Therefore, the adequacy of representation requirement is satisfied.

Accordingly, it is clear to this court that Plaintiffs have satisfied all requirements set forth in Rule 23(a). In addition to satisfying the requirements of Rule 23(a), however, Plaintiffs must also satisfy Rule 23(b). Rule 23(b) sets forth three criteria, one of which must be fulfilled before a class action is maintainable. *Esplin,* 402 F.2d at 98. In the instant case, only the second criterion, Rule 23(b)(2), is applicable, and it is satisfied. That provision states: "The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). Other courts have affirmed the propriety of class action litigation, pursuant to Rule 23(b)(2), to redress improper practices and policies with respect to the Social Security disability system. *See, e.g.,*

*Holden v. Heckler,* 584 F.Supp. 463, 488–89 (N.D.Ohio 1984); *Aldrich v. Schweiker,* 555 F.Supp. 1080, 1090 (D.Vt.1982).

In the instant case, the Secretary and the State Defendants have allegedly acted or refused to act on grounds generally applicable to the class, which would make final injunctive relief or corresponding declaratory relief appropriate to the class as a whole. Therefore, Rule 23(b) is satisfied.

Because the requisites of Rule 23 have been satisfied, this court certifies the proposed class as defined by the court *supra.* If it later becomes apparent that a class action is not the most efficient form of litigating the controversy, the court may decertify the class. Further, the court may narrow or expand the class at a later date.

### CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant Secretary of Health and Human Services Donna Shalala, M.D.'s Motion to Dismiss for lack of subject matter jurisdiction is denied.

2. State Defendants Scott Bean, Blaine Peterson, and Charles Schmitt's Motion to Dismiss for lack of subject matter jurisdiction is denied and their Motion to Dismiss for failure to state a claim is denied.

4. Plaintiff Goodnight et al.'s Motion for Class Certification is granted, with the court's modification of the class definition.

---

instance. In fact, Plaintiffs' First Amended Complaint, Memorandum in Support of Plaintiffs' Motion for Class Certification ("Plaintiffs' Memorandum in Support of Motion for Class Certification") and Reply to Defendant's Opposition to Motion for Class Certification ("Plaintiffs' Reply Memorandum"), discuss only alleged illegal de-

nials of applications at the initial and reconsideration levels; they do not allege that these procedures also are applied in the termination procedure. *See, e.g.,* First Am.Compl. ¶ 2; Pl.s' Mem. Supp.Mot. for Class Certification at 1, 9; Pl.'s Reply Mem. at 2, 12.