**ROCKY MOUNTAIN HELICOPTERS, INC., Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

No. 90–9546.

United States Court of Appeals, Tenth Circuit.

July 27, 1992.

Robert S. Young, Provo, Utah, for petitioner.

Sheila A. Skojec (Harry S. Gold with her on the brief) of the F.A.A., Washington, D.C., for respondent.

Before McKAY, Chief Judge, LOGAN and MOORE, Circuit Judges.

McKAY, Chief Judge.

Rocky Mountain Helicopters, Inc. ("Rocky Mountain") petitions this court to vacate a final order of the Federal Aviation Administration ("FAA") prohibiting Rocky Mountain from using night vision enhancement devices ("night vision goggles").

Rocky Mountain provides emergency medical evacuation services that frequently require pilots to fly at night. On October 17, 1989, Rocky Mountain notified the FAA by letter that it intended to have pilots use night vision goggles. Prior to that time, these goggles had been used primarily in military operations.

In response to Rocky Mountain's letter, the local Flight Standards District Office ("FSDO") of the FAA informed Rocky Mountain that it was prohibited from using the devices and that the FSDO would amend Rocky Mountain's operations specifications accordingly. R. doc. 3. Rocky Mountain protested the FSDO's decision, but the FSDO, in consultation with regional and national FAA officials, confirmed the proposed action. R. doc. 5.

Rocky Mountain was allowed time to submit arguments regarding the proposed amendment. The company did so but contended that the FAA's failure to give specific reasons for its action limited Rocky Mountain's ability to respond. Shortly after receiving Rocky Mountain's arguments, the FSDO informed Rocky Mountain that the proposed amendment to its operations specifications had been adopted. Rocky Mountain petitioned the FAA's Director of Flight Standards Service for reconsideration of the decision to amend, pursuant to 14 C.F.R. § 135.17(d) (1989). In its petition, Rocky Mountain asserted that the FAA had engaged in substantive rulemaking without providing notice and opportunity to comment as required by the Administrative Procedures Act ("APA").

The Director of Flight Standards Service denied Rocky Mountain's petition for reconsideration, citing concern for the devices' safety. R. doc. 13. The Director also stated that the FAA was proceeding under 14 C.F.R. § 91.9 (1989),[1] which prohibits operation of an aircraft in a careless or reckless manner, and 14 C.F.R. § 135.17 (1989), which allows amendment of operations specifications in the interest of safety in air commerce. R. doc. 13.

On appeal, Rocky Mountain argues that the FAA's decision to amend the operations specifications is substantive rulemaking that is subject to the procedural requirements of the APA. Rocky Mountain also contends that the FAA acted arbitrarily and capriciously and that it unreasonably construed 14 C.F.R. §§ 91.9 and 135.17 (1989). The FAA responds that it merely supplied a reasonable interpretation of these existing statutes. Because the APA applies only to substantive rulemaking, the FAA argues that the procedural requirements of the APA are irrelevant to this matter.

The central issues in this case are whether the FAA complied with relevant procedural requirements when it prohibited Rocky Mountain's use of night vision goggles, and, if so, whether the FAA's actions in this case survive judicial scrutiny. We take up the procedural issue first and then turn to the substance of the FAA's actions.

 The FAA is constrained by certain procedural requirements when it engages in administrative rulemaking. These requirements are quite stringent if the rulemaking is substantive and are more relaxed if the rulemaking is interpretive. Thus, an administrative rule must be characterized as either substantive or interpretive before compliance with applicable procedural requirements can be assessed.

 This court has determined that a rule is substantive if it is promulgated pursuant to a direct delegation of legislative power by Congress and if it changes existing law, policy, or practice. *See Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1351 (10th Cir.1987) (citations omitted). A rule is interpretive if it is promulgated by an agency having authority to issue substantive rules and if it attempts to clarify an existing rule but does

---

**1.** The substance of this statute is now found in 14 C.F.R. § 91.13(a) (1992).

not change existing law, policy, or practice. *See Knutzen*, 815 F.2d at 1351 n. 6. Any rule made by an agency having no authority to issue a substantive rule is also considered to be interpretive. 2 Kenneth Culp Davis, *Administrative Law Treatise* § 7.8, at 38 (2d ed. 1979).[2]

■ In the case before us, the FAA's rulemaking authority is undisputed. Congress has delegated authority to the FAA to regulate in the area of air safety. 49 U.S.C.App. § 1348 (1988); 49 U.S.C.App. § 1421 (1988). Given this clear authority to regulate, the determinative question here is whether prohibiting the use of night vision goggles constitutes a change in existing law, policy, or practice.

Rocky Mountain argues that the FAA's action in this case constitutes a change in existing law, policy, or practice because the FAA has prohibited what was previously not prohibited. This argument relies on two cases in which the FAA attempted to halt ongoing practices. *Southern Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672 (9th Cir.1989) (forty-year-old practice of banner-towing flights); *San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966 (9th Cir.1989) (sports parachuting). Night vision goggles, however, have never been allowed in civil aviation. The cases cited by Rocky Mountain are therefore inapposite. Because the FAA's action in this case does not change existing law, policy, or practice, we hold that the FAA's rulemaking here was interpretive rather than substantive.[3]

■ Having determined that the FAA's action was not procedurally deficient, we turn now to the substance of the FAA's decision regarding night vision goggles. Courts are generally deferential when reviewing an agency's interpretation of regulations which it must administer. *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (citations omitted); *City of Aurora v. Hunt*, 749 F.2d 1457, 1462 (10th Cir.1984). This is especially so where, as here, the interpretation relates to a matter particularly within the agency's area of expertise.[4] *Hill v. National Transp. Safety Bd.*, 886 F.2d 1275, 1278 (10th Cir.1989) (citation omitted).

■ Proper administrative interpretation of a statute, rule, or regulation must meet the following three requirements: (1) the factual findings underlying the interpretation must be supported by substantial evidence, *Greater Orlando Aviation Auth. v. FAA*, 939 F.2d 954, 958 (11th Cir.1991); *Department of Health and Human Servs. v. Federal Labor Relations Auth.*, 885 F.2d 911, 915 (D.C.Cir.1989) (citations omitted); (2) the agency must offer a satisfactory explanation for its actions, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); and (3) the interpretation must be consistent with the statute, rule, or regulation being interpreted, *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977).

After examining the rather sparse record in this case, we conclude that the FAA has

---

**2.** Other courts have used a variety of factors to determine whether a rule is substantive or interpretive. *See, e.g., Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974) (court considers whether rule affects individual rights and obligations); *Rochna v. National Transp. Safety Bd.*, 929 F.2d 13, 15 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991) (whether rule depends on a statute for substantive meaning or is in itself substantive); *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985) (whether rule will create new law, rights, or duties); *Batterton v. Marshall*, 648 F.2d 694, 705 (D.C.Cir.1980) (whether rule issued in form of an explanation); 2 Kenneth Culp Davis, *Administrative Law Treatise* § 7.16

(2d ed. 1979) (some courts consider whether rule has substantial impact on those it affects). This lack of a uniform approach may attest to the difficulty of the determination.

**3.** Because the APA does not apply to interpretive rulemaking, we need not consider Rocky Mountain's arguments that the FAA violated the APA.

**4.** Because night vision goggles pose technical questions both of fact and policy, requiring evaluation of complex technical and scientific information and the degree of risk presented by the use of night vision goggles in passenger-carrying civil aircraft operations, regulation of the devices falls within the FAA's area of expertise.

**548**

failed to meet the first requirement. In order to prohibit use of night vision goggles under 14 C.F.R. § 91.9 (1989) or 14 C.F.R. § 135.17 (1989), the FAA would have to find that unregulated use of the devices would pose a potential danger to air safety.[5] *Hill v. National Transp. Safety Bd.,* 886 F.2d 1275, 1280 (10th Cir. 1989); *Roach v. National Transp. Safety Bd.,* 804 F.2d 1147, 1157 (10th Cir.1986), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 195 (1988). The agency would then have to support this factual finding with substantial evidence.[6]

■ The FAA's denial of Rocky Mountain's petition recites questions regarding hazards that might possibly arise from use of night vision goggles. The denial makes a finding that it "would not be in the interest of air safety" to permit use of the goggles while questions of their safety remain unresolved. R. doc. 13. This bare finding is supported by no evidence in the record. The denial merely cites FAA research that may answer the safety questions at some unspecified future time. This vague reference to questions rather than answers, or even preliminary study results, cannot satisfy the substantial evidence requirement.

We also note that the FAA has failed to articulate a satisfactory explanation for its actions in this case. The Supreme Court has stated that "a rational connection between the facts found and the choice made" would be a satisfactory explanation, but that where the agency has failed to adequately supply this, "[t]he reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. at 43, 103 S.Ct. at 2867 (citations omitted). The primary deficiency of the record in this case, lack of

evidence to support a factual finding, is compounded where we have no indication from the record that the FAA's response to the factual finding was well reasoned under the applicable statutes.

Given these significant problems with the record, we hold that the FAA acted improperly in interpreting the relevant safety statutes. Thus, we need not consider the final requirement of an interpretive action, that it be consistent with the underlying statute, rule, or regulation.

We VACATE the decision of the FAA prohibiting Rocky Mountain's use of night vision goggles and REMAND this case to the FAA for further proceedings consistent with this opinion.

---

5. Section 135.17 expressly requires a factual finding that air safety necessitates an amendment to a certificate holder's operations specifications before such an amendment can be imposed.

6. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Gallagher v. National Transp. Safety Bd.,* 953 F.2d 1214, 1219 (10th Cir.1992) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).