David L. GOODNIGHT, et al., Plaintiffs,

v.

Shirley S. CHATER, et al., Defendants.

No. 2:92CV279.

United States District Court,
D. Utah,
Central Division.

April 14, 1997.

Karen K. Fox, Helena, MT, Maureen L. Cleary, St. Scholastica Priory, Petersham, MA, Brent V. Manning, Holme Roberts & Owen, Salt Lake City, UT, for Plaintiffs.

John S. McAllister, Utah Attorney General's Office, Education Div., Salt Lake City, UT, Brian G. Kennedy, Pamela Moreau, U.S. Department of Justice, Washington, DC, Carlie Christensen, Asst. U.S. Attorney, Scott M. Matheson, Jr., Office of the U.S. Attorney, Salt Lake City, UT, Stuart M. Gerson, U.S. Dept. of Justice, Civil Div., Washington, DC, for Defendants.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

WINDER, Chief Judge.

This matter is before the court on Plaintiffs' and Defendants' cross-motions for summary judgment. Plaintiffs comprise a class which was previously certified by this court pursuant to Fed.R.Civ.P. 23. *See Goodnight v. Shalala,* 837 F.Supp. 1564, 1581–84 (D.Utah 1993). Defendants are the Secretary of Health and Human Services and the directors of various state agencies charged with the administration of certain aspects of the social security program.

Among other claims, Plaintiffs allege that Defendants have adopted policies and engaged in practices which are contrary to federal law. Moreover, Plaintiffs allege that Defendants made substantive policy changes without complying with the notice and comment provisions required by the Administrative Procedures Act (APA). Plaintiffs also claim that Defendants' toleration of these unlawful practices rose to the level of deliberate indifference with regard to violations of Plaintiffs' rights; therefore, Plaintiffs contend that Defendants' conduct gives rise to a cause of action under 42 U.S.C. § 1983.

Defendants argue that the challenged policy is consistent with existing law and regulations, and that any changes in policy did not trigger the APA's notice and comment requirements. Defendants also claim that Plaintiffs have failed to show that Defendants

were on notice of the alleged improper practices or that Defendants were deliberately indifferent to that conduct; therefore, Defendants argue that Plaintiffs' § 1983 claim must fail.

A hearing on these motions was held on January 28, 1997. At the hearing, Plaintiffs were represented by Brent V. Manning. The Federal Defendant was represented by Pamela A. Moreau and Cathryn G. Powers. The State Defendants were represented by John McCallister. Before the hearing, the court had carefully considered the memoranda and other materials submitted by the parties. At the conclusion of the hearing, Defendants were given leave to submit a reply memorandum in support of Defendants' cross-motion for summary judgment. Defendants submitted such a reply on February 14, 1997.

Since taking the matter under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

The background to this case is set forth in detail in *Goodnight v. Shalala*, 837 F.Supp. 1564, 1567–69 (D.Utah 1993). The following facts pertain to the specific issues involved in the motions now before the court.

The Utah Disability Determination Service (DDS) evaluates social security claims at the initial and reconsideration steps of the disability determination process. Disability examiners, who are not doctors, are actively involved in these tasks. It is the role of these disability examiners which is at the center of the parties' dispute. The relevant statutory and regulatory law provides as follows:

A. "An initial determination ... that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h).

B. "A medical consultant must be a physician. A psychological consultant used in cases where there is evidence of a mental impairment must be a qualified psychologist." 20 C.F.R. § 404.1616 (1916).

C, "In cases where the State agency makes the disability determination, a State agency staff medical or psychological consultant must assess residual functional capacity where it is required." 20 C.F.R. §§ 404.1546, 416.946 (1996).

D. "At the initial and reconsideration levels the standard document must be completed and signed by our medical consultant." 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1) (1996) (describing procedure used in evaluation of severity of mental impairments and preparation of psychiatric review technique form (PRTF)).

Guidelines for determining disability are contained in the Program Operations Manual System (POMS) which reflects the policy of the Social Security Administration (SSA). Plaintiffs challenge the validity of the following provision:

2. Recording the RFC [residual function capacity] Determination
   a. The RFC assessment is recorded on:
   * The SSA–4734–U8 for physical impairments (See DI 24510.055.)
   * The SSA–4734–F4–SUP for mental impairments. (See DI 24510.090.)
   b. The disability examiner may assist in completion of the RFC assessment forms. However, the MC or PC, as appropriate, must sign the SSA–4734–U8 or SSA–4734–F4–SUP to attest that he/she is responsible for its content, including the findings of fact and discussion of supporting evidence.

POMS § DI 24510.005, at ¶ B.2.[1]

Prior to the promulgation of the above provision, SSA policy required that a medical

---

**1.** The nomenclature of the various forms translates as follows:

| | |
|---|---|
| Form SSA 4734–U8 | Residual Function Capacity assessment ("RFC") |
| Form SSA 4734–F4–SUP | Mental Residual Function Capacity ("MRFC") |
| Form SSA 2506–BK | Psychiatric Review Technique Form ("PRTF") |

or psychological consultant fill out the form which documented a social security applicant's residual function capacity. On January 15, 1991, the state administrator for Utah advised disability examiners that they could now participate in completion of the RFC forms pursuant to a modification of SSA policy. On June 29, 1992, the SSA's Associate Commissioner for Disability provided all regional commissioners an advanced copy of the final POMS.

At least two DDS doctors have stated that they signed RFCs, MRFCs, and PRTFs based on the recommendations of disability examiners without independently reviewing the files. In particular, Doctor Manya Atiya, a DDS psychological consultant, unequivocally states that she signed RFCs, MRFCs and PRTFs without reviewing the files or after only a cursory review. Doctor Atiya also maintains that this was accepted agency practice.

## II. DISCUSSION

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Thomas v. IBM*, 48 F.3d 478, 486 (10th Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The court views the evidence and draws any reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Id* at 484.

## A. The Agency Policy Is Consistent with the Law

■ The agency's policy, articulated in POMS § DI 24510.005, at ¶ B.2, allows dis-

ability examiners to assist in determinations of residual function capacity. Plaintiffs challenge the validity of this provision. Specifically, Plaintiffs allege that the assistance of disability examiners, who are not doctors, is inconsistent with the statute and regulations governing determinations of disability pursuant to the Social Security Act. This court finds that the policy is consistent with both the regulations and the statute.

The Social Security Act requires that "disability determinations ... made by a State agency shall be made in accordance with the pertinent provisions of this subchapter and the standards and criteria contained in regulations or other written guidelines of the Commissioner of Social Security." 42 U.S.C. § 421(a)(2). The statute also provides that "the Commissioner. shall promulgate regulations specifying, in such detail as the Commissioner deems appropriate, performance standards and administrative requirements and procedures to be followed in performing the disability determination function." *Id.* Thus, Congress expressly delegated to the agency broad authority to create regulations, structures, and procedures to facilitate the effective and uniform administration of the disability insurance program. To that end, the SSA developed the disputed POMS provision which provides that "[t]he disability examiner may assist in completion of the RFC assessment forms. However, the [medical or psychological consultant] must sign the [form] to attest that he/she is responsible for its content, including findings of fact and discussion of supporting evidence." POMS § DI 24510.005, at ¶ B.2.

Specifically in regard to mental cases involving RFCs, the statute provides special guidance where an initial determination is made that a person is not disabled, but where evidence indicates a mental impairment. In that event, the law requires "every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h). The regulations require uniformity in the treatment of

mental and non-mental cases by similarly stating that a doctor must assess residual function capacity where it is required. *See* 20 C.F.R. §§ 404.1546, 416.946 (1996). Thus, in all cases where residual function capacity is to be determined, both the statute and the regulations require that a doctor (either a psychological or medical consultant) "complete[ ] the case review" and "assess" the social security applicant's disability.

It is the opinion of this court that a statutory obligation to "assess" an applicant's residual function capacity does not preclude the assistance of others in making such an evaluation. Indeed, doctors, like other professionals including lawyers and judges, routinely and necessarily rely on the assistance of others to effectively perform in their demanding occupations. The law does not prevent a disability examiner from assisting in that effort even to the extent of an examiner drafting the form as a recommendation for the doctor's acceptance or rejection. Significantly, however, the POMS clearly limits the disability examiner's role by stating that the doctor is responsible for the form's contents. There should be no ambiguity in the requirement. that a doctor is the final word on the evaluation. When the doctor signs the form attesting to a person's condition, the doctor places his or her professional judgment behind that assessment.[2] Accordingly, this court holds that the terms of the statute, the regulations, and the challenged policy, are not inconsistent.

2. In his deposition, Doctor James Shaka, a psychological consultant for the DDS, correctly articulates the standard for a consultant's compliance with the procedure:

Q: [W]hat does it mean when you put your signature on the RFC or the PRTF?

A: It means that I have reviewed that case, that I have reviewed it sufficiently to reach an independent judgment on my own and that this is my opinion on the adjudication of this claimant.
Pls.' Reply Mem., Ex. 1 (Dep. of James A. Shaka, at 85).

3. The parties frame this argument as a question of whether the disputed provision is substantive versus interpretive; however, this court finds the relevant issue is whether the rule is substantive versus procedural. It should be noted that Defendants did not raise this distinction and Plaintiffs addressed it only in a brief footnote.

## B. The Notice and Comment Provisions of the APA Were Not Triggered by the Agency's Procedural Change

Plaintiffs claim that Defendants violated the APA by failing to subject POMS § DI 24510.005 to public notice and comment. Plaintiffs contend that the POMS provision represents a change in long-standing agency practice regarding the role of disability examiners in determining RFCs and MRFCs. Plaintiffs argue that such a change compels a finding that the challenged POMS provision is substantive; therefore, compliance with the rule making procedures pursuant to the APA is mandatory. Defendants respond that the POMS provision is an interpretive rule and that notice and comment were not required.

The APA requires an agency to observe various rule making procedures regarding "substantive rules of general applicability." 5 U.S.C. § 552(a)(1)(D). Generally, before a rule is made effective, the agency must publish the proposed rule in the Federal Register allowing appropriate time and opportunity for public comment. *Id.,* § 553(b)-(d). However, these rule making provisions do not apply "to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(3)(A).[3]

Courts have struggled with the distinction between substantive rules, which an

Contrary to Plaintiffs' assertion, a rule is not substantive simply because it represents a change. That argument applies to the substantive-interpretive dichotomy which was relevant in *Rocky Mountain Helicopters, Inc. v. FAA,* 971 F.2d 544, 546-47 (10th Cir.1992) and *Knutzen v. Eben Ezer Lutheran Housing Center.,* 815 F.2d 1343, 1351 (10th Cir.1987). Both of these cases held that the challenged agency rule was interpretive, not substantive, because the rule did not represent a change in existing law, policy, or practice. Neither case, nor any other by the Tenth Circuit, squarely addresses the APA exemption for rules of procedure.

Nevertheless, the court also rejects Defendants' assertion that the challenged POMS provision can be characterized as an interpretive rule. According to the Tenth Circuit, "[a] rule is interpretive ... if it attempts to clarify an existing rule but does not change existing law, policy, or practice." *Rocky Mountain Helicopters,* 971 F.2d at 546-47. The POMS provision clearly represents

agency must subject to public notice and comment, and procedural rules which are exempt from that APA requirement. *JEM Broad. Co. v. FCC,* 22 F.3d 320, 326 (D.C.Cir. 1994). In general, procedural rules cover agency actions that do not themselves alter the rights or interests of parties even though a party outside the agency may be incidently affected. *Id.,* "The problem with applying the exception is that many merely internal agency practices affect parties outside the agency often in significant ways." *Batterton v. Marshall,* 648 F.2d 694, 707 (D.C.Cir.1980) (suggesting that even changes in agency office hours may affect the public interest by necessarily, requiring conformity with the new practice) (citing E. Freund, *Administrative Powers over Persons and Property* 213 (1928)). The focus of the determination must be on the challenged rule's "effect on those interests ultimately at stake in the agency proceeding." *Neighborhood TV Co. v. FCC,* 742 F.2d 629, 637 (D.C.Cir.1984).

The ultimate interests at stake in this case are Plaintiffs' entitlements to certain disability benefits. The challenged POMS provision does not change the law or the standards for determining who is entitled to those benefits or the amount of such benefits if a determination of disability is made. The provision simply sets forth the acceptable degree of participation by disability examiners in the mechanics of making disability decisions, including determinations of residual function capacity. Indeed, the substantive effect of the rule on Plaintiffs' interests, if any, is incidental. Notwithstanding the assertions and inferences set forth in Plaintiffs' memoranda, the nature and degree of any substantive impact as a result of the procedural change, is not clear to this court. Plaintiffs have not yet sufficiently demonstrated that the involvement of disability examiners, within the limits contained in the policy, is the source of the alleged deficiencies in the disability determination process.[4]

---

a change from prior practice. *See* Pls.'App. to Mem., Ex. 49 (DDS inter-office memo dated January 15, 1991, stating: "SSA has modified its policy on completing [RFC] forms."); *id.* at Ex. 50 (Disability Determination Services Administrators' Letter No. 179: "We are currently preparing [POMS] instructions to reflect this change in procedure.").

However, change alone is not enough to compel submission to notice and comment requirements because the APA's rule-making provisions provide exceptions regarding "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). It is this procedural exception which this court finds to be dispositive on this issue.

**4.** The procedural exemption to the APA's notice and comment requirement has not applied to cases where the challenged provision had a direct impact on substantive rights or entitlements. However, the exemption has applied to changes in agency procedure where the substantive impact was incidental, and not a direct result of the challenged provision, or where the impact on those regulated was outweighed by a countervailing public interest in effectiveness, efficiency, expedition, or reduction in expense. *Compare Phillips Petroleum Co. v. Johnson,* 22 F.3d 616, 620–21 (5th Cir.1994) (describing two-pronged analysis of (1) departure, and (2) substantial impact; and invalidating agency's change in method used to determine royalties due from oil and gas lease holders because departure from existing practice had substantial impact on those reg-

ulated); *Batterton v. Marshall,* 648 F.2d 694, 707–08 (D.C.Cir.1980) (holding notice and comment required for Department of Labor modification of method used to calculate unemployment statistics which triggered emergency job program allocations to states); *Pickus v. United States Bd. of Parole,* 507 F.2d 1107, 1114 (D.C.Cir.1974) (holding APA rule making procedures required for regulations regarding parole hearings which were likely to produce parole decisions different from those which alternatives were likely to produce); *Aiken v. Obledo,* 442 F.Supp. 628, 652–54 (E.D.Cal.1977) (finding no exception to APA requirements for change in procedure for approving food stamp applications by requiring a collateral contact to confirm applicant's statements regarding eligibility) *with American Hosp. Assoc. v. Bowen,* 834 F.2d 1037, 1049–52 (D.C.Cir.1987) (finding APA exception for agency directives regarding focus of peer review organization and frequency of inspections); *United States Dept. of Labor v. Kast Metals Corp.,* 744 F.2d 1145, 1152–56 (5th Cir.1984) (affirming procedural exemption for rule which changed criteria and method for selecting employers targeted for routine safety and health inspections); *Neighborhood TV Co. v. FCC,* 742 F.2d 629, 637–38 (D.C.Cir.1984) (finding APA exception for freeze on processing of television translator licenses pending publication of final rules); *Guardian Fed. S & L Assoc. v. FSLIC,* 589 F.2d 658, 665–66 (D.C.Cir.1978) (finding APA exception applied to regulation which changed auditing procedure and directed that requisite audits be performed by private-sector rather than public accountants).

The POMS provision challenged by Plaintiffs is the agency's answer to an increased load on limited resources. The procedure is consistent with the statute and regulations because it confirms that doctors are responsible for RFC assessments while allowing disability examiners to assist in a significant though limited role. The change in agency policy, which increased the participation of disability examiners in the process, was a procedural change which did not have a direct impact on Plaintiffs' substantive entitlements. Any substantive impact on Plaintiffs' rights was incidental and indirect; therefore, the challenged provision qualifies for the APA exception to the public notice and comment requirements.

## C. Plaintiffs' 42 U.S.C. § 1983 Claim

Plaintiffs claim that Defendants violated Plaintiffs' civil rights by failing to ensure that doctors conducted an independent review of each of Plaintiffs' cases. More specifically, Plaintiffs allege that the Utah DDS adopted a custom where disability examiners completed RFCs, MRFCs, and PRTFs leaving medical and psychological consultants to merely sign the evaluations without adequate review of the examiners' work. Plaintiffs seek vindication of their right to fair procedures pursuant to 42 U.S.C. § 1983.[5]

To prevail on this claim, Plaintiffs must show (1) the existence of a continuing, persistent and widespread practice of unlawful misconduct by agency personnel, (2) deliberate indifference to or tacit approval of such misconduct by agency policy making officials after notice to the officials of that particular misconduct, and (3) that Plaintiffs were injured by virtue of the unlawful acts pursuant to the agency custom and that the custom was the moving force behind the unlawful acts. *See Gates v. Unified Sch. Dist. No. 449,* 996 F.2d 1035, 1041 (10th Cir.1993).

This court has already held that the agency procedure, as set forth in the POMS, is consistent with both the statute and regulations; therefore, the question critical to

Plaintiffs' § 1983 claim is whether Defendants violated their own policy by not ensuring that medical or psychological consultants conducted independent assessments on each disability case involving a determination of RFC.

■ In regard to RFC and MRFC forms, it is not significant that disability examiners assisted in filling out the documents insofar as such assistance was allowed by the POMS. However, if doctors signed RFCs or MFRCs without independently reviewing the examiners' work, the statute, the regulations, and the POMS were all violated.

■ As to PRTFs, this court finds that a different standard applies. SSA policy states that: "[U]nder no circumstances is the examiner permitted to complete the PRTF." Defs.' Ex. D, at 2 (POMS § 24505.030F); *see also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (1996) (both provisions stating: "At the initial and reconsideration levels the standard document [PRTF] must be completed and signed by our medical consultant."). The meaning of the term "complete" is somewhat ambiguous. However, it is clear enough that these provisions articulate a more restricted role for disability examiners regarding PRTFs as opposed to MRFCs and RFCs; a role which the SSA did not expand with the promulgation of POMS § 24510.005 already discussed in this opinion. *See* Pls.' App. to Mem., Ex. 50 (Disability Determination Services Administrators' Letter No. 179 publishing draft of POMS provision describing change in procedure for RFCs and MFRCs but noting: "[T]here is *no change* in the procedure for completion of the psychiatric review technique form (PRTF)."); *see also id.* at Ex. 52, p. 17 (SSA Pub. No. 64–026 dated Sept. 1985: "The PRTF is to be prepared *exclusively* ... in its entirety by a psychiatrist or psychologist."). Notwithstanding Defendants' apparent effort to equate the procedure for PRTFs with the policy for RFCs and MFRCs, this court finds that Defendants have violated their own policy and the regulations if disability examiners

---

**5.** Section 1983 provides that "[e]very person who, under color of [legal authority] subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privi-

leges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983 (1994).

completed (i.e., filled out or wrote substantive information upon) PRTF forms which were the final copies used to document the agency's disability determinations.[6]

■ It is abundantly apparent to this court that Plaintiffs have set forth sufficient evidence to present a question of fact regarding their § 1983 claim. Plaintiffs have provided evidence showing that disability examiners routinely filled out PRTFs in violation of SSA policy.[7] Moreover, the deposition of Doctor Manya Atiya provides concrete support for Plaintiffs' assertion that a practice existed in the Utah DDS where doctors signed disability determinations and RFC assessments without conducting independent reviews of those cases.[8] Doctor Atiya's deposition also provides evidence that the practice was not limited to isolated incidents.[9] Furthermore, Doctor Atiya maintains that both her supervisor and the Director of DDS were aware of the conduct, ignored the concerns about the practice, and even encouraged it.[10] Finally, Doctor Atiya suggests that disability decisions were made incorrectly because disability examiners did not have the appropriate training or expertise to understand and evaluate complicated medical and psychological issues.[11]

6. This court will not hold that it is impermissible for a disability examiner to compile evidence and outline a recommendation for the consultant's review, even to the extent of filling out a draft copy of the PRTF, so long as it is the consultant who fills out and signs the final document. However, a disability examiner may not write upon the final PRTF which the consultant ultimately signs.

Notwithstanding the deference owed to the agency's interpretation of its regulations, this is the most liberal interpretation this court is prepared to draw in light of the SSA's own policy which expressly limits the examiners' role regarding this form.

7. Q: Is that your general practice, then, to complete PRTF forms?
. . . .
A: I do that in most cases.
Pls.' App. to Mem., Ex. 26 (Dep. of disability examiner Michelle Perkins, at 23).
Q: . . . Your supervisors know that you are completing the PRTF form; is that right?
A. Yes.
Q: Does the director of your agency know that?
A: Yes.
Q: Has anyone ever reviewed with you the policy that allowed you to do that?
A: In our training we were told that we could do it.
Pls.' Reply Mem., Ex. 6 (Dep. of disability examiner Margret Schleidt, at 29).

8. Q: Is it correct that cases were given to you where you signed the physical RFC without reviewing the file at times?
A: Yes, sir.
Q: Is it correct that cases were given to you where you were asked to and did sign a mental RFC without reviewing the file?
A: Yes. . . . I would try at least to give it a cursory review before I signed it.
Pls.' Reply Mem., Ex. 2 (deposition of Manya Atiya, at 19–20).

9. Q: In your experience there, did you ever observe other physicians signing RFC's without reviewing the files?

A: Yes, because I think—because it was policy.
Pls.' Reply Mem., Ex. 2 (deposition of Manya Atiya, at 20–21).
The deposition of Doctor Rebecca B. Dalisay, another DDS consultant, corroborates Doctor Atiya's assertions:
A: [T]here is a yellow sheet on top of a chart that says sign RFC or sign 831 and they check which one to be signed, and that's in the context of how we have signed the RFC's.
Q: Have you signed those in that context?
A: Yes.
Q: In those cases, did you review the medical evidence in the file?
A: No.
Q: You just signed the RFC?
A: Yes.
Pls.' App. to Mem., Ex. 25 (Dep. of Rebecca B. Dalisay, at 17).

10. Q: And you were told by [supervisor] Rick North to sign them without reviewing them?
A: Yes. I objected to that procedure.
. . . .
Q: [T]o your knowledge, was the director, Mr. Schmitt, aware of this policy?
A: Yes.
Q: How do you know that?
A: I believe I spoke to him on a number of occasions about concerns on that matter.
Pls.' Reply Mem., Ex. 2 (Dep. of Manya Atiya, at 22).

11. Q: [W]ere the claims examiners adequately prepared and competent to complete a PRTF form?
A: That was a particularly difficult area because, especially in mental cases, when you have a chart, there may be multiple diagnoses, conflicting information, all kinds of difficult problems to be resolved. And they would be—they certainly would have a great deal of difficulty trying to make any kind of sense out of a lot of what was in the chart, making sense of it in a medical way.
Q: Would the quality of the decision be affected?

■ If these assertions are proved at trial, Plaintiffs will have successfully demonstrated that Defendants violated the Social Security Act, the regulations, and SSA policy regarding Plaintiffs' disability claims because the agency custom and practice prevented the independent assessment by doctors guaranteed by law. Plaintiffs also will have succeeded in showing an injury and the requisite causal connection of that injury to the unlawful custom if Plaintiffs can prove that Defendants' exploitation of the role of disability examiners caused, or is immediately threatening to cause, erroneous disability decisions to Plaintiffs' detriment.[12]

Defendants have set forth evidence which contradicts the deposition testimony and other materials submitted by Plaintiffs;[13] however, this dispute must be appropriately resolved at trial and not on summary judgment.

> A: Yes.
> . . . .
> Q: And so if the claims examiner completed the PRTF and the MRFC and brought those faulty judgments into that decision making process, that would affect, then, the determination that was being made; isn't that correct?
> A: Yes.

Pls.' Reply Mem., Ex. 2 (deposition of Manya Atiya, at 44–45).

12. This court disagrees with Plaintiffs' assertion that the deprivation of their right to have disability determinations made by doctors is itself an injury sufficient to support a cause of action under § 1983. *See* Pls.' Reply Mem., at 35. That statement misconstrues this court's description of the harm which could result from further delays precipitated by a requirement that Plaintiffs exhaust their administrative remedies prior to bringing this action. *See Goodnight v. Shalala*, 837 F.Supp. 1564, 1575 (D.Utah 1993).

13. Q: During your tenure at Utah DDS, was it ever reported to you that doctors were signing physical RFC's prepared by claim examiners without reviewing the file?
A: No. That wouldn't—that was never reported to me. If they did that, they would do that on their own initiative. I think doctors are pretty sensitive about what they sign, so I think they would be careful to review anything they signed.
Q: Was it ever discussed in any of your meetings with the doctors or with the administrators that doctors were signing physical RFC forms without reviewing the files?

## III. CONCLUSION

1. POMS § DI 24510.005 is consistent with the Social Security Act and regulations promulgated pursuant to the agency's authority under the Act.

2. POMS § DI 24510.005 is a procedural rule which qualifies for the exemption to the notice and comment requirements set forth in the Administrative Procedures Act.

3. Genuine issues as to material facts remain regarding Plaintiffs' claim that Defendants violated 42 U.S.C. § 1983 by Defendants' deliberate indifference to an agency practice of claims processing without independent assessment by doctors.

Accordingly, based on the foregoing and good cause appearing, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion for Partial Summary Judgment is DENIED.

> A: No, I didn't have anybody report that. If they did that, they did it on their own. It was not policy.

Defs.'Ex. D, at 48–49 (Dep. of Talmage Nielson, DDS Medical Consultant).

> Q: Were you ever instructed to simply sign [an MRFC or PRTF] without reading or reviewing it to your satisfaction first?
> A: No.
> Q: Did you ever do that?
> A: No.
> Q: I'm sorry, did you ever sign a PRTF or a mental RFC or a physical RFC without reviewing it to your satisfaction?
> A: No.
> . . . .
> Q: Did you ever instruct another of the doctors or medical consultants to sign either the PRTF or mental RFC or RFC without reviewing it to their satisfaction?
> A: No.

Defs.'Ex. E, at 81–82 (Dep. of James A. Shaka, DDS Psychological Consultant).

> Q: Did you ever instruct doctors at any time when you were director that they should not review the RFC's or MRFC's before [signing] them?
> A: No. Quite the contrary.
> Q: Did you ever instruct Dr. Shaka or Dr. Nielson or Dr. Atiya or Dr. Dalisay that they should not review the RFC's and the MRFC's or the PRTF's—
> A: No.
> Q: —before signing them?
> A: No.

Pls.' App. to Mem., Ex. 33, at 95; Defs.' Ex. F, at 96 (Dep. of Charles Schmitt, Director, Utah DDS).

2. Defendants' Cross–Motion for Partial Summary Judgement is DENIED IN PART AND GRANTED IN PART.